WALTER, APPELLANT, *v.* MARION PRODUCTION CREDIT ASSOCIATION, APPELLEE.

216

(No. 9-85-37—Decided
December 15, 1987.)

*Martin J. Holmes & Associates* and
*Martin J. Holmes,* for appellant.
*O'Brien & Bauer, William S.
O'Brien* and *James Funk,* for appellee.

EVANS, J. This is an appeal from a
decision of the Marion County Court of
Common Pleas wherein the court di-
rected a verdict in favor of the defen-
dant, Marion Production Credit Asso-
ciation (hereinafter "MPCA"), and
against the plaintiff, Jack E. Walter
(hereinafter "Walter").

In 1981 Walter, a farmer by trade,
and his wife Susanne borrowed a cer-
tain sum of money from MPCA to
cover the farm's operating expenses
for that year. The Walters had ob-
tained yearly operating loans from
MPCA since 1972. However, unlike the
preceding years, Walter and his wife
were unable to repay the 1981 loan

when the crops were harvested at the
end of the crop year.

In May 1982 Walter applied for an
extension of the 1981 loan and a new
operating loan to cover his 1982 farm-
ing expenses. Since the 1981 loan was
delinquent, Christopher Rose, a loan
officer with MPCA, informed Walter
that MPCA would probably allow the
extension of the 1981 loan and approve
the 1982 operating loan, but would re-
quire certain collateral as security.
Walter agreed to have the notes se-
cured and offered his crops and land as
collateral, but specifically requested
that no lien be placed on his farm
equipment.

On or about April 1, 1981 Walter
and his wife Susanne were separated
and continued to live apart until their
divorce in September 1983. The Wal-
ters were separated, though not di-
vorced, at the time Walter applied for
an extension of the 1981 loan. The
transcript reveals that Susanne,
through her attorney, Jeff Roth, in-
formed MPCA that she preferred the
farm equipment be used to secure the
1981 loan. This request was never con-
veyed to Walter.

While there is some confusion as to
the exact date, Walter met with Rose
sometime in early May 1982 and exe-
cuted the documents necessary to re-
new the 1981 loan and qualify for the
1982 loan. Included among the several
loan documents were two financing
statements. The first placed a lien on
Walter's crops. The second placed a
lien on his farm equipment. Walter's
testimony is that Rose approached him
with a clipboard of documents with an
"X" marked on each of them indi-
cating the place where he should sign.
He stated that he observed only the
first financing statement and did not
know that a financing statement iden-
tifying his farm equipment as col-
lateral was included among the papers.
He further testified that Rose failed to

inform him that the equipment had been used to secure the note.

Prior to Walter's executing the loan documents, on or about May 6, 1982 a letter was sent to "Mr. and Mrs. Jack E. Walter" at Susanne's address informing them that the extension of the 1981 loan had been approved but that the farm equipment would have to be used as collateral. There was no evidence offered to show that the letter was also sent to Walter's address even though Rose knew the Walters were living separately and knew Walter's correct address as early as May 3, 1982. Furthermore, a copy of a letter was produced, also dated May 6, 1982 that was mailed to Walter at the correct address informing him that the 1982 operating loan had been approved. There was no mention in that letter that MPCA intended to use his farm equipment as collateral.

In July 1982 Walter was mailed a copy of the filed financing statement attaching the farm equipment. All the witnesses who testified admitted that in their opinion Walter did not know the equipment had been attached prior to receiving a copy of the financing statement and that he was greatly distraught upon receiving this information.

On October 27, 1982 Rose sent a letter to Walter informing him that it was apparent that he would need to sell either his machinery, real estate, or some of each in order to solve his repayment problems. On November 4, 1982 Walter entered into an agreement with MPCA which supplemented the 1982 loan agreement in which he agreed to sell sufficient assets by a specified time that would allow him to pay off the MPCA loan. In exchange, MPCA agreed to release the proceeds from the sale of popcorn and a CCC soybean loan which were being held by MPCA as collateral for the 1982 loan.

On December 20, 1982 Rose sent a second letter to Walter in which MPCA agreed to release the proceeds from the sale of oats to Walter but only upon the receipt of a written plan which provided for the sale of assets sufficient to repay the MPCA loans. Other than the letters sent by Rose which referred to Walter's need to sell some of his property, MPCA never attempted to force a sale or enforce its liens against any of Walter's equipment or machinery.

On March 16, 1983, pursuant to a divorce stipulation Walter entered with his wife, he agreed to sell his farm equipment and machinery at a public auction. The proceeds from the sale were to be used, among other things, to repay the debt still owed MPCA for the 1981 loan. Walter arranged the sale.

On May 14, 1984, Walter filed a complaint against MPCA with the common pleas court alleging that MPCA had defrauded him by concealing from him the fact that a lien had been placed on his farm equipment. He further alleged that MPCA's deceit resulted in his being forced to sell his equipment at a price substantially less than its worth and that he had suffered serious emotional distress as a result of the fraud.

A trial by jury was held beginning October 29, 1985 and, after the close of plaintiff Walter's case, MPCA made a motion for a directed verdict. After hearing the arguments of counsel, the court granted MPCA's motion in favor of MPCA and against Walter. It is from this decision that Walter appeals.

For his only assignment of error Walter asserts the following:

"The trial court erred, as a matter of law, in directing a verdict in Defendant's favor at the close of the Plaintiff's case as Plaintiff presented sufficient evidence on each element of his Cause of Action so that reasonable minds could differ and come to more

than one conclusion based on the evidence presented."

Civ. R. 50(A)(4) states:

"When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."

In the case before us, the court of common pleas determined, after hearing the plaintiff Walter's case, that reasonable minds could reach only one conclusion, and that was to find for the defendant, MPCA.

One of the reasons given by the trial court for directing a verdict in favor of the defendant MPCA was that Walter had waived any objection he might have had to the alleged fraud by complying with the terms of the contract. However, the court in *Djubasak v. Taylor* (App. 1955), 72 Ohio Law Abs. 132, 128 N.E. 2d 849, held that:

"It is well settled that one who has been induced to enter into a contract by fraudulent representations may elect to retain that which he has received under the contract and later bring an action to recover damages for the injury he has sustained from the deceit." *Id.* at 133, 128 N.E. 2d at 850.

According to *Djubasak,* if Walter was the victim of fraud he had the right to receive the benefits of the contract and still bring a lawsuit against the defendant MPCA for damages he might have suffered as a result of the fraud. Therefore, his compliance with the terms of the note did not result in a waiver to any objection to the alleged fraud he may have had.

Walter had the responsibility of producing evidence to support his allegations that MPCA had committed a fraudulent act and that he had been damaged as a result of the deceit. In *Friedland* v. *Lipman* (1980), 68 Ohio App. 2d 255, 22 O.O. 3d 422, 429 N.E. 2d 456, the court found that to prove a common-law fraud the plaintiff must produce evidence to show (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying on it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliances.

Walter testified at trial that he had specifically requested that no lien be placed on his farm equipment and that in direct contravention to that request, MPCA did place such a lien on the equipment which its agent, Christopher Rose, concealed from him. He testified that on the day he signed the loan documents Rose approached him with a clipboard of documents already marked with X's to show him where to sign. He stated that he did not read the documents but noticed that the form on top was a financing statement attaching his crops. Since he and Rose had already agreed to this he read no further. He also testified that Rose did not mention to him at that time that MPCA intended to place a lien on his farm equipment.

While it may be argued that MPCA should not be held accountable for Walter's failure to read the documents before he signed them, the facts clearly show that MPCA had established a fiduciary relationship with Walter over the past ten years and thus had a duty to inform him of any fact material to the extension of the 1981 loan. The

court in *Bays* v. *Hunter Savings Assn.* (S.D. Ohio 1982), 539 F. Supp. 1020, at 1025, recognized this duty and held that "Ohio law imposes a duty to make full disclosure in circumstances where full disclosure is necessary to dispel misleading impressions that are, or might have been, created by partial revelation of the facts."

Rose testified that Walter was sent a letter notifying him and his wife that MPCA intended to place a lien on the equipment. The letter, which was placed into evidence, was dated May 6, 1982. However, on cross-examination, Rose admitted that the letter was sent to Walter's previous address even though MPCA knew Walter's current address when the letter was sent. In fact, MPCA sent a letter to Walter on that same day at his correct address concerning his 1982 operating loan.

We believe the testimony of the parties raises the issue, and reasonable minds could reach more than one conclusion, as to whether MPCA attempted to conceal from Walter the fact that the lending institution intended to put a lien on Walter's farm equipment and whether Walter rightfully relied on the concealment to his detriment.

Walter also had the responsibility of presenting evidence to support his allegations that MPCA's alleged fraudulent acts resulted in some injury to him. One of the reasons assigned by the trial court for granting MPCA's motion for a directed verdict was the fact that Walter was legally obligated to pay off the debt he owed to MPCA. While we agree that Walter owed the amount of the note to MPCA, we do not believe this implies he suffered no injury. Walter may have been obligated to repay the debt, but he was under no legal obligation to offer his farm equipment as security. Given the option, he could have pursued other means of satisfying the obligation.

Walter attempted to show that the lending institution's fraudulently placing a lien on his farm equipment resulted in his being forced to sell the equipment at a loss, and that his lack of the necessary farming equipment resulted in his producing approximately ten bushels an acre less after the sale than he had in prior years. However, the trial court found that Walter voluntarily sold the equipment to satisfy a divorce stipulation and that MPCA was not responsible for his loss.

While there is evidence to support the trial court's finding, we do not agree this was the only conclusion that could have been reached. Walter produced evidence to show that in October 1982 and December 1982 he received letters from Rose which spoke of the need to sell Walter's farm machinery, real estate, or some of each so that he could meet his financial obligations to MPCA. MPCA's file on Walter also indicated that Walter was in arrears on both the 1981 and 1982 notes when he agreed to place the equipment for sale. Walter was fully aware at the time he agreed to the sale that the equipment was encumbered. It is certainly conceivable that a jury could find that notwithstanding the pressures he felt to settle the divorce, MPCA had also applied pressure on Walter to sell certain assets, and he sold his property because he felt he had no other choice. Therefore, we do not agree with the trial court's finding that reasonable minds could have reached only one conclusion and that was Walter sold his property voluntarily.

Lastly, Walter alleged MPCA's conduct caused him to suffer serious emotional distress. In addition to Walter's testimony, his ex-wife, son, and Rose testified that Walter was greatly distraught upon finding out that MPCA had placed a lien on his farm equipment. He also placed into evidence the deposition of Dr. Edwin Davis, his treating physician, who

testified that he had been treating Walter with medication since February 8, 1983 and that Walter suffered from a dysthymic disorder, which was a mild to moderate form of depression that generally lasted for a long duration. Dr. Davis testified that Walter had discussed MPCA's alleged trickery, and that Walter felt stress and time pressure from trying to accumulate the money to maintain the payment on his loans. However, Dr. Davis also testified that Walter's past alcoholism was the only probable cause he could identify at the time for the depression and anxiety. Nevertheless, Dr. Davis did testify that the conduct of MPCA was a precipitating factor that may have made a difference in the intensity of the illness.

In order to prove a cause of action for serious emotional distress, Walter must prove (1) MPCA intended to cause emotional distress or knew or should have known that its conduct would result in Walter's suffering serious emotional distress, (2) MPCA's conduct was outrageous and extreme and beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community, (3) MPCA's conduct was the proximate cause of Walter's psychic injury, and (4) Walter's psychic injury was serious and no reasonable person could be expected to endure it. See *Pyle* v. *Pyle* (1983), 11 Ohio App. 3d 31, 11 OBR 63, 463 N.E. 2d 98.

Walter produced evidence to show that he had been and still was suffering from depression and anxiety. Furthermore, there was testimony by Dr. Davis that the depression was possibly intensified by MPCA's alleged misconduct. Walter also produced evidence to show that while MPCA sent a letter addressed to him outlining the terms under which the 1981 loan would be extended, it was sent to the wrong address and MPCA knew his correct address when the letter was sent. There was testimony by Rose that Walter had specifically requested that his farm equipment not be attached, and that the request to place the lien on the farm equipment came from Susanne who was acting under the advice of her attorney, Jeff Roth. Rose testified that he personally knew Roth and that he had performed legal work for MPCA in the past. We believe these facts are sufficient to allow a jury to reach more than one conclusion as to whether Walter proved his claim the MPCA's conduct was outrageous and resulted in his suffering serious emotional distress.

Before a trial court may grant a party's motion for a directed verdict, the court must weigh the evidence most strongly in favor of the party against whom the motion is made and conclude that reasonable minds could reach only one conclusion on determinative issues. We find that on the evidence submitted in this case there were determinative issues upon which reasonable minds could reach different conclusions. Appellant Walter's assignment of error is well-taken.

The judgment of the trial court is reversed.

*Judgment reversed.*

MILLER and SHAW, JJ., concur.