DLOUHY, Appellant,

v.

FRYMIER et al., Appellees.

[Cite as *Dlouhy v. Frymier* (1993), 92 Ohio App.3d 156.]

Court of Appeals of Ohio,
Lorain County.

No. 92CA005517.

Decided Sept. 15, 1993.

*Nicholas E. Phillips,* for appellant.

*Ralph Brooks,* for appellees.

Cook, Presiding Judge.

Lawrence D. Dlouhy ("Dlouhy") appeals from the trial court's rescission of the land installment contract he had with Bacil and Patricia Frymier ("Frymiers") and from the trial court's dismissal of his appeal of the ancillary arbitration award in the case. We conclude that the rescission is supportable based on principles of contractual misrepresentation. Further, we conclude that the trial court erred by dismissing other pending issues in the case without the notice required by Civ.R. 41(B)(1).

## FACTS

In 1988, the Frymiers listed their farm for sale in order to enable them to move to West Virginia. During June and July, Dlouhy, a licensed real estate agent, discussed the possibility that he would purchase the farm. On August 25, Dlouhy and the Frymiers executed a written option agreement. Dlouhy told the Frymiers that the agreement meant that he could purchase the property for $78,000 [1] and that he would need a couple of weeks to get the financing to pay the purchase price in full.

On September 12, Dlouhy presented the Frymiers with a land installment agreement for $78,000, payable in one hundred nineteen monthly installments of $380 and one final, balloon payment for the balance. After reading certain parts of the contract to the Frymiers, he asked them to sign it. Patricia Frymier asked Dlouhy about the one-hundred-nineteen-month provision and he told her that it meant nothing and that they would receive the entire purchase price in a few weeks. The Frymiers signed the land installment contract and Dlouhy took all the copies. Dlouhy also took the Frymiers' mortgage payment coupon book and informed them that he would make those payments until he obtained the purchase money.

Over the course of the parties' dealings, an apparently friendly relationship developed. By June 1989, however, the Frymiers became frustrated because Dlouhy had not obtained the full purchase price.

In January 1990, Dlouhy sued the Frymiers, seeking, in part,[2] restitution of the property pursuant to the land installment contract. The Frymiers counter-

---

1. The option agreement stated: "I [Dlouhy] agree to pay the sum of $78,000 on the following terms: payable at $380.00 per month for 205 months, with balloon at 120 months or sooner."

2. Dlouhy's complaint also contained a cause of action for an alleged assault by Bacil Frymier.

claimed, seeking rescission of the land installment contract on grounds of fraud and unconscionability. The Frymiers moved to dismiss Dlouhy's forcible entry and detainer claim, which the trial court granted. The court then referred the issue of enforcement or rescission of the contract to a referee for a hearing. The referee recommended, and the trial court adopted, rescission of the contract and return of any payments made by Dlouhy.

Next, the trial court referred the remaining issues in the case to arbitration. The arbitrators awarded Dlouhy $7,203.51 for mortgage payments made by him and $2,200 for his tort claim. The arbitrators also awarded the Frymiers $775 for the expense of moving their cattle to West Virginia in reliance on the contract and $10,000 for damages incurred in relying on Dlouhy's fraudulent representations. Dlouhy appealed this award.

The trial court set the issues appealed from the arbitration award for trial and ordered that all testimony be presented by videotape. Dlouhy, however, did not file any videotaped testimony by the court's deadline, October 1, 1992. As a result, the trial court dismissed the case without notice to Dlouhy.

Dlouhy appeals assigning five errors.

### Assignment of Error II

"The trial court erred in adopting the findings of fact and conclusions of law and the recommendation of the referee."

### RESCISSION OF THE LAND CONTRACT

Dlouhy argues that the trial court erred on two determinative bases: (1) the Frymiers could not reasonably rely on the oral representations of Dlouhy because they signed a written contract; and (2) no evidence existed that the Frymiers lacked the ability to understand the terms of the written contract. We hold, however, that the trial court did not err because, under the circumstances of this case, the Frymiers could reasonably rely on Dlouhy's misrepresentations that he was going to pay them the full purchase price in a couple of weeks.

We first note that, although the trial court adopted the phrase "lack of mutuality" to describe its legal conclusion, the case is analyzed and the remedy of rescission is imposed based on contract misrepresentation. A contract claim for misrepresentation requires: (1) a false representation which is material to the contract; (2) with the intent of deceiving another into relying on it; (3) justifiable reliance upon the representation; and (4) resulting injury proximately caused by the reliance. See *Walter v. Marion Prod. Credit Assn.* (1987), 42 Ohio App.3d 215, 218, 537 N.E.2d 676, 679–680.

■   First, Dlouhy claims that no evidence was presented that he made a false representation.  He argues that because he complied with the written terms of the contract, the Frymiers have no cause of action.  The issue of misrepresentation by Dlouhy does not center, however, on his compliance with the written contract, but rather on his false representation that the contract obligated him to pay the entire purchase price within weeks of the signing.  Numerous witnesses testified that Dlouhy repeatedly and consistently told the Frymiers and their relatives that he had funds in a retirement and deferred compensation plan and owned other real estate and antique cars which, when liquidated, would fund the purchase in full.  Generally, the parol evidence rule prohibits the admission of testimony regarding prior or contemporaneous oral agreements which contradict or vary the terms of written agreements.  *Burton v. Durkee* (1952), 158 Ohio St. 313, 49 O.O. 174, 109 N.E.2d 265.  However, a major exception to the general rule permits the introduction of contemporaneous oral representations when fraud is alleged.  *Walter, supra,* 42 Ohio App.3d at 219–220, 537 N.E.2d at 681.  The contemporaneous oral representations of a party may be used to prove the alleged fraud.  *Finomore v. Epstein* (1984), 18 Ohio App.3d 88, 89, 18 OBR 403, 404–405, 481 N.E.2d 1193, 1194–1195.

Next, Dlouhy asserts that the Frymiers did not justifiably rely on his misrepresentations because they were able to read and they, in fact, did read the option-to-purchase contract which had the same terms as the land installment contract. While Dlouhy is correct in stating that the general rule obligates parties to read the contracts that they sign and holds them responsible to the terms of such contract, there are exceptions.  The trend is to allow relief, "particularly if some artifice has been used to prevent the recipient from reading the writing * * *." Farnsworth, Contracts (1982) 248, Section 4.14.  Further, "[c]ourts are * * * particularly indulgent if the recipient is weak or credulous, even if the falsity of the representation would be obvious to a normal person." *Id.* at 247.  If the fraud works because the victim was careless in not reading and understanding the terms of the contract, that does not render it any less a fraud.  *Id.* at 248.

■   In this case, Dlouhy held a real estate license since 1972, and drafted both the purchase option agreement and the land installment contract.  He only read certain portions of the land installment contract to the Frymiers and did not leave a copy of the contract with them.  Moreover, he fostered a relationship of trust and friendship prior to presenting the contracts.  His girlfriend testified that when they would visit the farm Patricia Frymier cooked meals for Dlouhy, allowed him to make his personal phone calls and did his laundry for him.  The Frymiers, on the other hand, convinced the referee that they lacked basic understanding of a real estate transaction and relied solely on the oral representations of Dlouhy, whom they trusted.  The Frymiers testified that they signed

the contract because they felt if they "couldn't trust a realtor or lawyer who could they trust." As the referee stated in his report, "an absence of education and business knowledge on the part of the [Frymiers] could not have escaped notice by [Dlouhy]." When Patricia Frymier asked Dlouhy what the one-hundred-nineteen-month provision meant, he told her that it meant nothing and that he was going to pay them in full. Given this particular type of evidence, we cannot say that the trial court erred in adopting the referee's report finding that the Frymiers justifiably relied on Dlouhy's misrepresentations as to the terms of the contract. Such misrepresentation warrants rescission. The effect of a rescission is to extinguish the contract for all purposes. *Rolling v. Ohio State Home Serv.* (July 14, 1993), Medina App. No. 2157, unreported, at 4, 1993 WL 261568. If rescinded, the contract becomes ineffective *ab initio* and no rights can be predicated upon it. The second assignment of error is overruled.

### Assignment of Error V

"The trial court erred by dismissing the case without prior notice to the Plaintiff's counsel."

## DISMISSAL WITHOUT PRIOR NOTICE

Dlouhy asserts that the trial court erred when it dismissed his appeal of the arbitrators' award without giving him notice. We agree. Dlouhy appealed the arbitrators' report and award on the issues of the Frymiers' counterclaim for tort damages and Dlouhy's claim for return of the mortgage payments he made for the Frymiers. The trial court set a date for trial and ordered that only videotaped testimony would be permitted. The court set October 1, 1992, as the deadline for Dlouhy to submit the videotaped testimony upon which he would rely. Dlouhy, however, did not submit any videotaped testimony, and the trial court dismissed the appeal from the arbitrators' report and award.

■ Having properly appealed the arbitrators' award, Dlouhy was entitled to have the case tried *de novo* with the Rules of Civil Procedure governing the actions by the trial court. Under Civ.R. 41(B)(1), a trial court may, on its own motion and after notice to the plaintiff's counsel, dismiss the case for failure to comply with a court order. The notice requirement is an absolute prerequisite for dismissal for failure to prosecute. *Geico Financial Serv., Inc. v. VRR, Inc.* (1990), 69 Ohio App.3d 556, 558, 591 N.E.2d 294, 295. Thus, the trial court erred when it dismissed the case without prior notice to Dlouhy's counsel.

The fifth assignment of error is sustained.

### Assignment of Error III

"The trial court erred in ordering rescission of the parties' land installment contract without conditioning such rescission upon refund by defendant-appellees of payments made by plaintiff-appellant."

Dlouhy claims that the trial court erred when it adopted the referee's report but failed to adopt the referee's recommendation that, to the extent that Dlouhy made payments on the Frymiers' mortgage, he should be reimbursed. The trial court, however, referred the issue of how much to reimburse Dlouhy to arbitration, where the arbitrators awarded Dlouhy $7,203.51 for reimbursement of the mortgage payments.

■ In that we concluded in Assignment of Error V that the trial court erred in dismissing Dlouhy's appeal from the arbitrator's award, consideration of this assignment is premature because the trial court must reinstate the case.

Thus, this assignment of error is overruled.

### Assignment of Error IV

"The trial court erred in ordering the referee's fees to be paid by plaintiff-appellant."

Dlouhy argues that because he should have been the prevailing party, the fees should not have been assessed against him. Having found that the trial court improperly dismissed the case, consideration of this assignment is premature and it is therefore overruled.

### Assignment of Error I

"The trial court erred in granting defendant appellees' motion to dismiss plaintiff-appellant's first cause of action."

■ Having found that the trial court properly rescinded the land installment contract, Dlouhy cannot predicate any rights upon that contract. Therefore, he is not entitled to a writ of restitution.

The first assignment of error is overruled.

The judgment of the trial court is affirmed in part and reversed in part. The trial court's judgment rescinding the land installment contract is affirmed. The trial court's judgment dismissing the case is reversed. The case is remanded to the trial court for further proceedings consistent with this opinion.

*Judgment accordingly.*

REECE, J., concurs.

QUILLIN, J., dissents.

QUILLIN, Judge, dissenting.

The majority, I fear, has failed to properly apply the parol evidence rule. The rule is more than a rule of evidence, it is a rule of substantive law which defines the contract. *Burton v. Durkee* (1952), 158 Ohio St. 313, 49 O.O. 174, 109 N.E.2d 265, paragraph one of the syllabus. "The rule rests upon a rational foundation of experience and policy and is essential to the certainty and stability of written obligations." 30 American Jurisprudence 2d (1967) 152, Evidence, Section 1016. "It has been said that while its application may on occasion seem to work injustice, on the whole it works for good." *Id.*

In the present case, appellees signed a contract which they knew called for the payment of $78,000 payable in one hundred nineteen monthly installments of $380 and a final balloon payment for the balance. Appellees have now been permitted to say that despite the clear payment schedule, the true agreement was that they were to be paid in full in a "few weeks."

I respectfully dissent.