**PAUL FORD, INC., Appellant,**

v.

**RUPE et al., Appellees.**

[Cite as *Paul Ford, Inc. v. Rupe* (1993), 90 Ohio App.3d 638.]

Court of Appeals of Ohio,
Portage County.

No. 93–P–0009.

Decided Sept. 30, 1993.

*John J. Flynn,* for appellant.

*Bernard D. Del Guzzi,* for appellees.

---

FORD, Presiding Judge.

This is an accelerated calendar case submitted on the briefs of the parties.

This case originated in the Portage County Municipal Court, Kent Division, where the court entered judgment in favor of appellees, Terry and Nancy Rupe, on the complaint filed by appellant, Paul Ford, Inc. ("Paul Ford"), and for appellant on the counterclaim filed by the Rupes.

In early March 1992, appellees visited appellant, a new car dealership in Garrettsville, Ohio, with the intention of buying or leasing a new car for their business. Appellees ran a small trucking business as a sole proprietorship. They subsequently agreed to lease a 1992 Ford Taurus sedan, for which they traded in their 1989 Ford Bronco II truck and financed the difference through a lease agreement with Society Bank ("Society").

From this point forward, the facts are largely contested. Appellees contend that appellant suggested the sale may be tax exempt pursuant to R.C. 5739.01 because Mr. Rupe ran an over-the-road trucking business and had a PUCO number. Mr. Rupe had purchased other vehicles from appellant, thus appellant was familiar with appellees' business. They also claim that appellant provided them with a tax exemption certificate, and stated it would check into the question of sales tax and let them know for sure if the transaction would be tax exempt.

Appellant, however, contends that appellees themselves represented that the transaction would be tax exempt and furnished appellant with the tax exemption certificate. Appellant claims that it told appellees the sale of a family car would not be tax exempt.

Regardless of which version of the facts is correct, it is undisputed that the certificate of exemption was incomplete because appellees did not indicate the reason for the exemption on the space provided.

According to the written sales agreement between appellant and appellees, sales tax was expressly excluded from the price of the car. However, appellant alleges that appellees *verbally* agreed to pay the tax if it was later discovered that the transaction was not tax exempt. Also, appellant points out that the "vehicle use" portion of the lease agreement with Society was marked as "consumer purpose" instead of "commercial purpose." Appellees admit that they did not notice this when they signed the form.

About three or four weeks after appellees had taken the new vehicle, appellant notified them that Society had rejected the sale as tax exempt, concluding that appellees would have to pay the tax. Upon being apprised of this, appellees refused to pay the tax because appellant had already sold the Ford Bronco they traded in to a third party, a Mr. Cox, thus extinguishing their right of rescission. Appellees also claim that appellant caused the transaction to be deemed non-tax-exempt by marking "consumer purpose" instead of "commercial purpose" on the lease form. Knowing that it had already sold appellees' trade-in vehicle, appellant paid the tax in the amount of $884.88, but demanded that appellees pay it back, giving them several payback options. However, appellees again refused to do so.

In negotiating this transaction, appellees represented to appellant that the truck they offered to trade in had an automatically transferrable extended warranty, which they bought when they originally purchased the truck. Neither party contests that appellees actually owned the warranty at the time of the trade-in.

Appellant orally agreed that because the warranty added to the attractiveness of the vehicle, appellant would add a few hundred dollars to the trade-in value. However, nothing was expressly noted in the sale or lease documents to indicate that the warranty was included in the value of the truck, and no warranty papers were physically transferred. Upon the sale of the truck to Cox, appellant represented to him that the extended warranty existed and would be automatically transferred to him. However, shortly after appellant sold the vehicle to Cox, appellees canceled the warranty. Cox discovered this after appellant completed some repair work which should have been covered under the warranty. Cox then demanded that appellant buy the truck back, which it did, in addition to paying for reinstatement of the warranty at a cost of $396. Appellant did so because it had represented to Cox that the warranty existed.

On April 9, 1992, appellant filed a complaint against appellees sounding in fraud. Appellant amended the complaint on July 16, 1992. Appellant demanded

judgment in the amount of $884.88 for repayment of the sales tax, other amounts necessary for reinstatement of the warranty and reimbursement of the services rendered to Cox, and punitive damages in the amount of $10,000.

Appellees filed an answer and counterclaim on May 21, 1992, denying the fraud allegations, and demanding judgment in the amount of $1,500 for their losses due to appellant's failure to rescind the transaction. After a bench trial, the court found that appellant failed to meet its burden of proving that appellees were obligated to pay the sales tax, or that appellees perpetrated a fraud concerning the warranty. It further found that appellees failed to establish any evidence regarding their counterclaim.

Appellant timely appeals, assigning the following as error:

"1.) The trial court erred in finding that the Rupes were not obligated to reimburse Paul Ford for the payment of the sales tax.

"2.) The trial court erred in finding that the Rupes did not defraud Paul Ford."

Under its first assignment of error, appellant maintains that appellees were obligated to pay the sales tax because the sale was not tax exempt. Specifically, appellant avers that the trial court erred in finding that appellant failed to show appellees were "contractually obligated" to pay the tax since appellees were *statutorily* obligated to pay the tax pursuant to R.C. 5739.03.

R.C. 5739.03(B) provides, in part, as follows:

" * * * If any sale is claimed to be exempt under division (E) of section 5739.01 * * * the consumer must furnish to the vendor, and the vendor must obtain from the consumer, a certificate specifying the reason that the sale is not legally subject to the tax. * * * The certificate shall be in such form as the tax commissioner by regulation prescribes. If no certificate is furnished or obtained within the period for filing the return for the period in which such sale is consummated, it shall be presumed that the tax applies. *The failure to have so furnished, or to have so obtained, a certificate shall not prevent a vendor or consumer from establishing that the sale is not subject to the tax within sixty days of the giving of notice by the commissioner of intention to levy an assessment, in which event the tax shall not apply.*" (Emphasis added.)

Appellant relies on the portion of R.C. 5739.03 which states that "each vendor shall collect from the consumer * * * the full and exact amount of the tax payable on each taxable sale * * *."

In *Stotts–Friedman Co. v. Lindley* (1982), 69 Ohio St.2d 348, 23 O.O.3d 316, 432 N.E.2d 202, the Ohio Supreme Court affirmed the Board of Tax Appeals' rejection of exemption certificates which included blank spaces. Accordingly, in the instant case, neither party has "furnished" or "obtained" a certificate as

contemplated by R.C. 5739.03 because the reason for the claimed exemption was not expressly indicated on the certificate.

In construing R.C. 5739.03 it is well settled that in a situation where, as in the instant case, a certificate has not been technically furnished, the burden to establish the right to an exemption is upon the taxpayer. *Barry Equip. Co. v. Limbach* (1988), 40 Ohio St.3d 119, 121, 532 N.E.2d 113, 115. However, sixty days is provided, *from the notice by the commissioner of his or her intention to levy an assessment,* to overcome the presumption that the tax applies. *Id.*

Thus, according to R.C. 5739.03, the first step in the process is that the Tax Commissioner must levy an assessment. Then, a sixty-day period is provided in order to allow the taxpayer additional time to collect the evidence necessary to establish the right to an exemption. *Frankelite Co. v. Lindley* (1986), 28 Ohio St.3d 29, 33, 28 OBR 90, 94, 502 N.E.2d 213, 216. Typically, letters of usage describing the exempted use(s) are solicited in this sixty-day period in order for the taxpayer to try and overcome the presumption of taxability. *Barry Equip. Co.,* 40 Ohio St.3d at 121, 532 N.E.2d at 115.

In the instant case, however, appellant did not meet its burden of proof in establishing that appellees were statutorily obligated to pay the sales tax. Appellant did not follow the mechanics of R.C. 5739.03. After Society determined that the transaction was not tax exempt, appellant proceeded to pay the tax without any notice of the Tax Commissioner's intent to assess a tax. At the time appellant paid the tax, appellees had not received any such notice from the Tax Commissioner. Thus, appellant did not follow the statutorily prescribed procedure for determining whether appellees owed the tax initially.

Society was not the appropriate entity to decide the taxable nature of the sale; that decision was strictly for the Tax Commissioner. Therefore, appellant acted precipitously in paying the sales tax based solely on Society's conclusion. Appellees should not be placed in an adverse position because of appellant's failure to adhere to the statutory procedure.

Consequently, based on the foregoing, appellant's first assignment of error is without merit.

Under its second assignment, appellant contends that appellees committed fraud when they represented to it that their truck had a transferable extended warranty, and then canceled it to receive a cash payment after appellant took possession.

In order to maintain an action for fraud, the plaintiff must show (1) a representation, (2) that is material to the transaction, (3) made falsely, with knowledge of its falsity, (4) with the intent of misleading another into relying on

it, (5) justifiable reliance by that other, and (6) injury proximately caused by the reliance. *Walter v. Marion Production Credit Assn.* (1987), 42 Ohio App.3d 215, 537 N.E.2d 676, paragraph two of the syllabus.

■ Appellees argue that the Statute of Frauds prevents the admission of testimony regarding the inclusion of the value of the warranty in the total trade-in value since it was a contemporaneous, material term which should have been expressed in the written agreement. However, "Ohio law has long provided that the parol evidence rule does not exclude oral testimony with respect to proof of consideration on a written instrument." *Trout v. Parker* (1991), 72 Ohio App.3d 720, 725, 595 N.E.2d 1015, 1018, citing *Monnett v. Monnett* (1888), 46 Ohio St. 30, 17 N.E. 659; *Blosser v. Enderlin* (1925), 113 Ohio St. 121, 148 N.E. 393.

■ As long as the evidence of additional consideration is not inconsistent with or contradictory of the writing, the parol evidence rule is not violated. See *Ayres v. Cook* (1942), 140 Ohio St. 281, 284, 23 O.O. 491, 493, 43 N.E.2d 287, 290. Hence, we see no reason to have excluded evidence of the oral agreement between the parties. Nonetheless, this evidence does not support appellant's allegations of fraud.

■ Initially, at the time of the trade-in, when appellees represented the existence of an extended warranty, such warranty did, in fact, exist. Appellant does not contest this. It was not until *after* the trade-in was completed that appellees canceled the warranty. Hence, the representation made by appellees was not a false one. Therefore, the "made falsely, or with knowledge of its falsity" prong of the fraud test was not satisfied at the time of appellant's reliance on the representation.

Next, appellant states the following in its brief: "In fact, [the Rupes] described the warranty and its advantages to the would-be buyers days after they sent the papers to Ford to cancel it." In so stating, appellant is attempting to show that appellees misled the new buyers in believing the warranty existed prior to canceling it. However, our review of the transcript pages cited indicates that this is an inaccurate statement. We find the following colloquy on those pages:

"Q: (Mr. Flynn) Did you talk to a subsequent purchaser about that extended warranty?

"A: (Terry Rupe) No, I never did. He called and talked to my wife. I was on the road.

"Q: Do you know what your wife told him?

"A: I have no idea. You would have to ask her."

Mrs. Rupe did not testify. Thus, there is no evidence from this exchange revealing that appellees described the advantages and characteristics of the

warranty to the new buyers prior to canceling it. Hence, appellant has made a frivolous argument which it knew was erroneous.

Based on the foregoing analysis, we conclude that appellant did not produce substantial evidence that appellees committed fraud. Therefore, appellant's second assignment is also without merit.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

JOSEPH E. MAHONEY and EDWARD J. MAHONEY, JJ., concur.

EDWARD J. MAHONEY, J., retired, of the Ninth Appellate District, sitting by assignment.