OPINION
On June 15, 1998, Patricia J. Crawford and her mother, Hattie L. Crawford, filed a complaint in the Franklin County Court of Common Pleas against Bill Swad Chevrolet, Inc. ("Bill Swad"), Jack Glen and Bank One, N.A.[1] The complaint averred that on December 10, 1997, Patricia Crawford entered into a purchase order with Bill Swad for the purchase of a used van. Patricia Crawford and Hattie Crawford, as co-maker, subsequently signed a Consumer Installment Loan and Security Agreement ("loan agreement") which indicated the Crawfords would be making eighteen monthly payments of $201.91. The loan agreement also indicated that the total the Crawfords would pay after making all payments was $7,268.76.
The complaint further averred that in late January 1998, the Crawfords received a second loan agreement in the mail. This second loan agreement indicated the Crawfords would be making forty-two monthly payments of $199.16 (for a total of $8,364.72). The Crawfords alleged that their signatures on the second loan agreement were forged. The complaint set forth claims of forgery, fraud, breach of contract, violations of the Ohio Consumer Sales Practices Act, violations of the Ohio Retail Installment Sales Act, violations of the Federal Truth In Lending Act and unjust enrichment.
On July 24, 1998, the Crawfords filed a motion for default judgment against Bill Swad and Mr. Glen as neither party had filed an answer. On August 10, 1998, the trial court granted the motion and set a hearing date on the issue of damages. Bill Swad and Mr. Glen subsequently filed separate motions for relief from judgment. On November 2, 1998, the trial court granted Mr. Glen's motion for relief from judgment, finding service was not proper, and denied Bill Swad's motion for relief from judgment.
On November 12 and 13, 1998, a hearing was conducted before a magistrate on the issue of damages against Bill Swad. On March 15, 1999, the magistrate issued a decision. The magistrate found the Crawfords were entitled to $6,265.04 in compensatory damages, which he trebled for a total of $18,795.12, punitive damages of $20,000 and attorney fees of $15,518.05. Bill Swad filed objections to the magistrate's decision.
On July 20, 1999, the Crawfords filed a motion for default judgment against Mr. Glen. On September 30, 1999, the trial court granted the motion and set a hearing date on the issue of damages against Mr. Glen.
On October 1, 1999, the trial court rendered a decision on Bill Swad's objections to the magistrate's decision. The trial court sustained and overruled certain of Bill Swad's objections. The trial court found the Crawfords were entitled to $4,730.34 in compensatory damages, trebled to $14,191.02, and $20,000 for punitive damages. The trial court found a failure of proof with regard to reasonable attorney fees and, therefore, made no such award. A judgment entry was journalized on December 7, 1999.
On December 21, 1999, the magistrate filed his decision on damages against Mr. Glen. The magistrate awarded the Crawfords $6,130.34 in compensatory damages, trebled to $18,391.02, $50,000 in punitive damages and $22,944.40 for attorney fees.
On January 31, 2000, the trial court journalized an entry adopting the magistrate's decision regarding damages against Mr. Glen. In such entry, the trial court found that Bill Swad and Mr. Glen were jointly and severally liable for $14,191.02 in compensatory damages and that Mr. Glen was liable for an additional $4,200 in compensatory damages.
Bill Swad (hereinafter "appellant") has appealed to this court, assigning the following errors for our consideration:
 I. THE TRIAL COURT ERRED IN COMPUTING PLAINTIFF'S (sic) DAMAGES.
 II. THE TRIAL COURT ERRED IN PERMITTING DOUBLE RECOVERY OF TREBLE DAMAGES UNDER THE CONSUMER SALES PRACTICES ACT AND PUNITIVE DAMAGES UNDER COMMON LAW.
Patricia and Hattie Crawford (hereinafter collectively referred to as "appellees") have filed a cross-appeal, assigning the following as error:
 The trial court erred by failing to award damages to plaintiffs against Swad, pursuant to a default judgment, for (1) attorney fees, (2) $1,400 in the form of a promised payment to induce purchase of a used motor vehicle, and (3) joint and several liability against both Swad and Glen for all damages.
We address appellant's assignments of error first. In its first assignment of error, appellant contends the trial court erred in computing compensatory damages. Specifically, appellant asserts the trial court ignored figures in the first loan agreement and erroneously considered parol evidence. As to the first loan agreement, appellant states that the error in such document is obvious in that eighteen monthly payments of $201.91 do not add up to the total payment of $7,268.76 listed in the same document. Appellant contends appellees signed the first loan agreement, agreeing to pay a total of $7,268.76. However, the trial court based the compensatory damages award on the difference between $8,364.72 (representing forty-two monthly payments of $199.16), the amount appellees were obligated to pay under the forged second loan agreement, and $3,634.38 (representing eighteen monthly payments of $201.91). Appellant contends the award should have been only $1,095.96, the difference between the total in the second loan agreement ($8,364.72) and the total listed in the first loan agreement ($7,268.76).
In reviewing the damages award, this court is guided by the presumption that the findings of the trier of fact were correct, and judgments supported by some competent, credible evidence will not be reversed as being against the manifest weight of the evidence. Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77,79-80. As to appellant's argument regarding parol evidence and the trial court's consideration of evidence that varies from the terms of the loan agreement, we note that appellees asserted more than just a breach of contract claim. The complaint set forth several claims including fraud and violations of the Ohio Consumer Sales Practices Act. Appellees were granted default judgment. Hence, appellant is liable under all of these claims.
As to damages, introduction of contemporaneous oral representations is permitted when fraud is alleged. Dlouhy v.Frymier (1993), 92 Ohio App.3d 156, 160, motion to certify overruled in (1994), 68 Ohio St.3d 1436; Finomore v. Epstein
(1984), 18 Ohio App.3d 88, 89. Indeed, a party may proffer evidence of a contemporaneous oral agreement when the agreement is made in order to induce a party to enter into a written agreement.Walters v. First National Bank of Newark (1982), 69 Ohio St.2d 677,681.
Further, the first loan agreement was unclear in that it indicated there would be eighteen payments of $201.91, yet it listed the total payment as being $7,268.76. These figures obviously do not add up. In Shifrin v. Forest City Ent., Inc.
(1992), 64 Ohio St.3d 635, syllabus, the Supreme Court of Ohio held that when the language of a contract is unclear or ambiguous, or when the circumstances surrounding the agreement invest the language of the contract with a special meaning, extrinsic evidence will be considered in an effort to give effect to the parties' intentions.
Given all of the above, the trial court did not err in considering evidence beyond that contained in the first loan agreement, including discussions and negotiations which occurred between the parties relating to amounts that would be paid. With this in mind, we turn to the evidence in order to determine if the trial court's judgment as to compensatory damages was supported by competent, credible evidence.
The purchase order indicated that the selling price of the van was $6,495, and the first loan agreement indicated that the amount financed was $6,355.79. The trial court acknowledged that certain figures (the monthly payments and total amount paid) did not coincide. Hence, the trial court correctly looked to the testimony to determine what had been agreed upon. As indicated above, the trial court determined that compensatory damages equaled the difference between $3,634.38 (eighteen monthly payments of $201.91) and $8,364.72, the amount appellees were obligated to pay under the forged second loan agreement. The evidence supports such a conclusion.
Patricia Crawford testified that the van was on sale for $4,995 and that she informed Mr. Glen what she could afford to pay. (Tr. 44-47.) When the numbers in the documents did not match up, Patricia Crawford immediately brought this to appellant's attention, and Mr. Glen explained it to her. Id. at 59, 65. Patricia Crawford testified she felt confident that she was paying less than $200 per month for less than twenty-four months, and she signed based on what Mr. Glen had told her regarding the amount and number of monthly payments. Id. at 59, 64.
Patricia Crawford indicated her understanding of the deal was that the sales price was $4,995, she was putting down $200, and she was getting $1,400 for a trade-in. Id. at 44, 65-66. Such figures equal $3,395. Appellant explained to her why the purchase price was listed at $6,495, and Mr. Glen told her not to worry about it. Id. at 66, 79. Patricia Crawford testified that she signed the loan agreement in reliance on the payments being listed as eighteen monthly payments of $201.91. Id. at 81.
Given this evidence, the trial court did not err in computing compensatory damages based on the monthly payments listed in the first loan agreement. The judgment in this regard was not against the manifest weight of the evidence. Accordingly, appellant's first assignment of error is overruled.
In its second assignment of error, appellant contends the trial court erred in awarding treble damages under the Consumer Sales Practices Act and punitive damages under common law. As indicated above, the trial court trebled appellees' compensatory damages pursuant to R.C. 1345.09(B)[2] and, in addition, awarded punitive damages of $20,000 for the common law violation(s). Appellant contends this was error and asks this court to overrule our decision in Mid-America Acceptance Co. v.Lightle (1989), 63 Ohio App.3d 590 and find that a consumer may not recover both treble damages under the Consumer Sales Practices Act and common law punitive damages.
In Mid-America Acceptance Co., the consumer set forth claims of fraud, detrimental reliance and violations of the Consumer Sales Practices Act. Id. at 595. The trial court determined there had been fraud and violations of the Consumer Sales Practices Act, trebled the consumer's actual damages and awarded punitive damages. Id. at 596. On appeal, the business argued that any award the consumer was entitled to under common law had been superceded by the Consumer Sales Practices Act. Id. at 601. This court stated that common law fraud was separate and distinct from the statutory violations. Id. at 600.
This court quoted R.C. 1345.13 which provides that the remedies in sections 1345.01 to 1345.13 of the Revised Code are in addition to remedies otherwise available for the same conduct under state or local law. Id. at 601. We indicated that the legislature fully intended that the remedies available to consumers under R.C. 1345.09 were in addition to remedies already available under common law fraud. Id. Specifically, this court stated that the Consumer Sales Practices Act did not supercede consumer's remedies under common law fraud. Id. Hence, this court held that if treble damages had been awarded, such would not preclude a punitive damages award as well. Id.
In Mid-America Acceptance Co., this court decided the issue of whether both treble damages and punitive damages are available to a consumer. The language of R.C. 1345.13 has not changed since this decision, and this court finds Mid-AmericaAcceptance Co. was correctly decided. Hence, the trial court did not err in awarding appellees both treble damages under R.C.1345.09(B) and punitive damages for common law violations.
Accordingly, appellant's second assignment of error is overruled.
We now turn to appellees' cross-appeal. In the first portion of their cross-assignment of error, appellees contend the trial court erred in not awarding attorney fees. The magistrate had awarded appellees $15,518.05 for attorney fees. Appellant objected to such award, stating the magistrate should not have considered a letter submitted by appellees' counsel after the damages hearing indicating he had a forty percent contingency fee agreement with appellees. In addition, appellant argued that the magistrate failed to determine whether or not the attorney fees were reasonable.
The trial court sustained appellant's objection, concluding that the letter submitted by appellees' counsel was not in affidavit form and was unauthenticated, and there was no evidence as to the reasonableness of the attorney fees. Hence, the trial court made no attorney fees award.
On appeal, appellees argue that Patricia Crawford's testimony at the damages hearing was sufficient to support an attorney fees award and point out appellant never cross-examined Patricia Crawford on this issue. At the damages hearing, Patricia Crawford testified that she had a contingency fee agreement with her counsel which she believed was forty percent. (Tr. 126.) This is the only evidence as to attorney fees. Plaintiff's counsel stated at the hearing that he would produce the actual fee agreement the following day, and the magistrate stated he would accept it and then cross-examination would be permitted. Id. However, appellees' counsel did not produce the fee agreement the following day. Appellant's counsel pointed this out on the following day and argued there was a failure of proof as to attorney fees. Id. at 331-334. Appellees' counsel responded by stating that Patricia Crawford's testimony established there was a contingency fee agreement. Id. at 337. Thereafter, the damages hearing closed. As indicated above, the magistrate subsequently awarded appellees attorney fees, but the trial court then denied them.
The first issue we must decide is whether the trial court should have awarded attorney fees based solely on Patricia Crawford's testimony that a contingency agreement existed. We answer this in the negative. Such testimony alone is not sufficient to make an attorney fees award.
The issue of attorney fees in cases under the Consumer Sales Practices Act has been addressed by the Supreme Court inBittner v. Tri-County Toyota, Inc. (1991), 58 Ohio St.3d 143. The Supreme Court began by looking at the language of the applicable statute, R.C. 1345.09(F), which limits the attorney fee award to work "reasonably performed." Id. at 145. The Supreme Court stated, therefore, that the most useful starting point in determining whether an award is reasonable is the number of hours reasonably expended multiplied by a reasonable hourly rate. Id. Such provides an initial estimate of the value of an attorney's services. Id. Given this, a contingency fee agreement alone cannot be the basis for an attorney fees award.
In fact, the Supreme Court held that when awarding attorney fees pursuant to R.C. 1345.09(F)(2), the trial court should first calculate the number of hours reasonably expended on the case multiplied by an hourly fee, and then the trial court may modify that calculation by application of the factors listed in DR 2-106(B). Id. at syllabus. The factors listed in DR 2-106(B), which may or may not be applicable in all cases, are: the time and labor involved in maintaining the litigation; the novelty and difficulty of the questions involved; the professional skill required to perform the necessary legal services; the attorney's inability to accept other cases; the fee customarily charged; the amount involved and the results obtained; any necessary time limitations; the nature and length of the attorney/client relationship; the experience, reputation and ability of the attorney; and whether the fee is fixed or contingent. Id. at 145-146.
Given the above, the trial court did not err in failing to award attorney fees based on the only evidence before it — the existence of a contingency fee agreement. However, this court finds that the trial court erred in not holding a further hearing in order to determine whether attorney fees were warranted for work "reasonably performed."
In Sprovach v. Bob Ross Buick, Inc. (1993), 90 Ohio App.3d 117,121, the court of appeals stated that the Consumer Sales Practices Act is a remedial statute and is to be construed liberally in order to promote its object and to assist the parties in obtaining justice. The object of R.C. Chapter 1345 is to provide a remedy to consumers who have been harmed by unfair, deceptive or unconscionable sales practices. Id. The object of R.C. 1345.09(F) is to ensure consumers will be capable of pursuing that remedy. Id. Actions under the Consumer Sales Practices Act typically involve relatively small damages, and most consumers would never bring or continue to prosecute an action given the likelihood of incurring more debt in attorney fees than could be recovered in damages. Id. at 121-122. See, also, Einhorn v. FordMotor Co. (1990), 48 Ohio St.3d 27, 30.
Given these general principles, the trial court erred in failing to conduct a further hearing on the issue of attorney fees under the principles set forth in Bittner, supra. See, alsoVillella v. Waikem Motors, Inc. (1989), 45 Ohio St.3d 36, 41
(where there is no substantive evidence regarding the value of attorney fees, a judgment awarding attorney fees is reversed and remanded for a redetermination of such fees).
In light of the above, appellees' cross-assignment of error relating to attorney fees is sustained, to the extent the trial court should have conducted a further hearing to determine whether reasonable attorney fees were warranted and if so, the amount of such fees.
In the second portion of their cross-assignment of error, appellees contend the trial court erred in failing to award them an additional $1,400 representing an amount Mr. Glen allegedly promised them in order to induce them to purchase the van. For the reasons that follow, we find there was insufficient evidence to support such an additional award.
The trial court correctly found the complaint averred that after appellees complained about the forged second loan agreement, appellant and Mr. Glen told appellees that they would receive a cash credit or rebate. However, the testimony as to this "rebate" did not equate with what was averred in the complaint. Instead, the testimony was that Mr. Glen promised a "rebate" when the discrepancy in the figures was brought up, not when appellees discovered the forged second loan agreement. Specifically, Patricia Crawford testified that when she brought up the discrepancies in the paperwork, Mr. Glen told her not to worry about it and that he would cut a check for approximately $1,400 representing refunds and tires she had bought. (Tr. 80.) Patricia Crawford testified that she signed the loan agreement based on this promise. Id. at 80-81.
Hattie Crawford testified that she signed the loan agreement despite the discrepancies because she and her daughter were told they would get a "rebate for these charges" and that such check would equal a year or so of payments. Id. at 149-150, 171, 187. Hattie Crawford did not recall the amount of such "rebate." Id. at 168, 188.
The evidence establishes that the alleged $1,400 "rebate" related to the first loan agreement. According to appellees, such "rebate" was to make up for the discrepancies in the figures. As indicated above, the trial court correctly based appellees' compensatory damages on the difference between $8,364.72, the amount appellees were obligated to pay under the forged second loan agreement, and $3,634.38 (representing eighteen monthly payments of $201.91 as set forth in the first loan agreement). The $3,634.38 figure was less than the total payment listed in the first loan agreement. Therefore, the trial court's compensatory damages award addressed the discrepancies about which appellees complained. Hence, appellees are not entitled to an additional $1,400 award.
For the reasons stated above, the trial court did not err in failing to award appellees an additional $1,400. Accordingly, that portion of appellees' cross-assignment of error relating to this issue is overruled.
In their final argument, appellees contend the trial court erred in failing to find appellant and Mr. Glen jointly and severally liable for all damages. There were separate damages hearings for appellant and Mr. Glen. The damages awarded against appellant were: $4,730.34 in compensatory damages, trebled to $14,191.02, and $20,000 in punitive damages. The damages awarded against Mr. Glen were: $6,130.34 in compensatory damages, trebled to $18,391.02, $50,000 for punitive damages, and $22,944.40 for attorney fees. In its entry adopting the magistrate's decision regarding damages against Mr. Glen, the trial court stated that it was not holding the parties jointly and severally liable for all damages because the damages hearings were separate and related only to the respective defendant in each hearing. However, in order to prevent appellees from recovering twice for the same damages, the trial court did make appellant and Mr. Glen jointly and severally liable for $14,191.02 in compensatory damages, while finding Mr. Glen solely liable for $4,200 (the difference between the compensatory damages award against appellant and the award against Mr. Glen).
Appellees assert that because they requested joint and several liability in their complaint and because they were granted default judgment against both appellant and Mr. Glen, the trial court should have found appellant and Mr. Glen jointly and severally liable for all damages awarded. It is true that both appellant's and Mr. Glen's liability was established through default judgment. However, damages were not thereby established. Further, default judgment against Mr. Glen was not obtained until after the damages hearing against appellant. The trial court's October 1, 1999 decision awarding damages to appellees as against appellant occurred prior to the damages hearing against Mr. Glen. Indeed, default judgment was not obtained against Mr. Glen until September 30, 1999, one day prior to the trial court's decision on damages against appellant.
Because there were separate default judgments against appellant and Mr. Glen and because there were separate damages hearings, the trial court did not err in failing to find appellant and Mr. Glen jointly and severally liable for all damages awarded to appellees. Accordingly, appellees' cross-assignment of error as to this issue is overruled.
Summarizing our disposition of appellees' cross-assignment of error, the cross-assignment of error is sustained, in part, to the extent the trial court erred in failing to conduct a hearing on the issue of attorney fees, and is overruled, in part, as to the trial court's failure to award appellees an additional $1,400 and to find appellant and Mr. Glen jointly and severally liable for all damages.
In summary, appellant's first and second assignments of error are overruled. Appellees' cross assignment of error is sustained, in part, and overruled, in part, as set forth above. The judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part, and this cause is remanded to such court with instructions to conduct a hearing to determine, in accordance with this opinion, whether reasonable attorney fees are warranted and if so, the amount of such fees.
DESHLER and BROWN, JJ., concur.
[1] Bank One, N.A. was subsequently dismissed pursuant to Civ.R. 41(A)(1).
[2] R.C. 1345.09(B), part of the Consumer Sales Practices Act, allows a consumer to recover three times the amount of his or her actual damages.