407 S.E.2d 361

**Edward EVANS and Mary Sue Evans, As Co–Administrators of the Estate of Barry Lee Evans,**

v.

**Prospero B. GOGO, M.D., and d/b/a the Southern West Virginia Clinic; and Maynard H. Bellamy, Jr., M.D., and d/b/a the Southern West Virginia Clinic.**

**No. 19190.**

Supreme Court of Appeals of West Virginia.

July 12, 1990.

Dissenting Opinion of Justice Brotherton, July 11, 1991.

Larry E. Losch, Summersville, for Edward and Mary Evans.

Michele Grinberg, Kay, Casto, Chaney, Love & Wise, Charleston, for Prospero B. Gogo, M.D.

Stephen D. Annand, Charleston, for Maynard Bellamy, Jr., M.D.

James B. Stoneking, Supreme Court Admin. Office, Charleston, filed amicus curiae.

PER CURIAM:

Edward and Mary Sue Evans appeal from an order of the Circuit Court of Raleigh County denying their motion to rein-

state a cause of action previously dismissed under Rule 41(b), *W. Va. R. Civ. P.*, for failure to prosecute. The circuit court denied reinstatement on the ground that there was no showing of good cause for the delay in prosecution. Because we conclude that change of out-of-state associate counsel constituted good cause in this case, we reverse the circuit court and remand the case for further proceedings.

The Evanses instituted a medical malpractice action on August 12, 1985 after the death of their thirteen year old son, Barry, from alleged side effects of his condition, ulcerative colitis and azulfidine, the drug treatment prescribed by Maynard H. Bellamy, M.D.[1] Dr. Bellamy and Prospero B. Gogo, M.D., Barry's treating pediatrician during the drug treatment, allegedly failed to warn and to monitor Barry during his treatment with azulfidine. The Evanses maintain that the alleged negligence of Dr. Bellamy and Dr. Gogo resulted in the death of their only son.

After answering the complaint, Dr. Bellamy filed interrogatories and a request for production of documents on August 23, 1985. Dr. Gogo also answered the complaint. After a motion to compel was filed on February 18, 1986, on March 6, 1986 the Evanses filed their interrogatory answers and produced the requested documents. In answering Dr. Bellamy's interrogatories, the Evanses indicated that their expert witness, W.G. Teague, M.D., had reviewed Barry's medical records and identified several areas of concern.

The court record indicates no other action occurred until an March 18, 1988 dismissal notice was sent to Larry E. Losch, the Evanses' attorney.[2] The dismissal notice indicated that "good cause" must be shown for the case to remain on the docket. On March 28, 1988, the case was dismissed without prejudice. On March 30, 1988, Mr. Losch sought to reinstate the case claiming

the withdrawal of the out-of-state counsel he had associated with for this case constituted good cause. Mr. Losch had informally associated with the firm of Ashcraft & Gerel to act as outside counsel because of the complex nature of this case. However, John E. Sutter, the attorney assigned to the case by Ashcraft & Gerel, left the firm in February 1987. Although the case was reassigned within Ashcraft & Gerel, there was a delay in transferring the file and in the Fall of 1987, Ashcraft & Gerel withdrew from all their West Virginia cases.

On August 15, 1988, the circuit court determined that the withdrawal of associate counsel did not constitute good cause and denied reinstatement.[3] On November 9, 1988, the circuit court denied the Evanses' motion to reconsider and the case was appealed to this Court.

On appeal Dr. Bellamy and Dr. Gogo argue that good cause had not been shown and reinstatement would be prejudicial to them. Dr. Bellamy currently practices in Mississippi and his family is experiencing severe health problems that require his constant assistance. Dr. Bellamy also argues that the plaintiffs have shown a lack of diligence and a "lackadaisical approach to the case." Dr. Gogo notes that his malpractice premium was elevated because of a lack of determination in this suit.

Because we find the circumstances of this case constitute good cause, we hold that the circuit court abused its discretion in failing to reinstate this case.

I.

The question presented by this appeal is whether the circuit court abused its discretion in declining to reinstate the action to its docket. Rule 41(b), *W. Va. R. Civ. P.* [1988], places within the discretion of the circuit court the power to strike from its docket an action "wherein for more than

---

1. The complaint was timely filed on the last day before the running of the statute of limitations.

2. The Administrative Office of the Courts in its *Amicus Curiae* brief urges us to adopt a statewide case management system in order to assure that courts timely dispose of cases.

3. On August 26, 1988, the Evanses requested a reconsideration of the dismissal. On September 19, 1988, Dr. Bellamy's counsel requested a hearing on this motion.

two years there has been no order or proceeding but to continue it...." [4] *See Arlan's Dept. Store of Huntington, Inc. v. Conaty,* 162 W.Va. 893, 253 S.E.2d 522 (1979) (discussing *W.Va.Code,* 56–8–9 and 12 [1931], statutory predecessors of Rule 41(b)). We have consistently viewed the time periods established by the rules of civil procedure as helping "to secure just, speedy and inexpensive determination in every action." Rule 1, *W.Va.R.Civ.P.* [1988]. However, Rule 41(b), *W.Va. R.Civ.P.* [1988], recognizes that valid reasons exist that can account for the lack of diligence in the prosecution of an action and permits reinstatement within three terms of the dismissal order. *Arlan's,* 162 W.Va. at 898, 253 S.E.2d at 525–526.

■ This Court has consistently required a showing of good cause in order for the plaintiff to be entitled to reinstatement. In Syllabus Point 1, *Brent v. Board of Trustees of Davis & Elkins College,* 173 W.Va. 36, 311 S.E.2d 153 (1983), we stated:

Under W.Va.R.Civ.P. 41(b), in order to reinstate a cause of action which has been dismissed for failure to prosecute, the plaintiff must move for reinstatement within three terms of entry of the dismissal order and make a showing of good cause which adequately excuses his neglect in prosecution of the case.

*Arlan's, supra; Nibert v. Carroll Trucking Co.,* 139 W.Va. 583, 82 S.E.2d 445

(1954); *White Sulphur Springs v. Jarrett,* 124 W.Va. 486, 20 S.E.2d 794 (1942); *Higgs v. Cunningham,* 71 W.Va. 674, 77 S.E. 273 (1913). We also have recognized the defendant's interest in an involuntary dismissal by holding:

Involuntary dismissal for failure to prosecute should only occur when there is lack of diligence by a plaintiff and demonstrable prejudice to defendant. (citations omitted).

*Gray v. Johnson,* 165 W.Va. 156, 163, 267 S.E.2d 615, 619 (1980). The determinations good cause and prejudice must be made in each case after a careful examination of the record. *Id.*

## II.

■ In order to determine if the court abused its discretion in failing to reinstate the present case, we must examine the reasons given for the delay, and the possible prejudicial effect of the delay on the defendants.

■ Mr. Losch contends that the changes in his association with out-of-state counsel constituted good cause for the delay in prosecution. We note that Mr. Losch's association was informal and not of record. The record indicates that although the case was pending for two and a half years, Mr. Losch did not conduct any discovery either when he was sole counsel or associated with out-of-state counsel. More than six months and a motion to compel

---

4. Rule 41(b), *W.Va.R.Civ.P.* [1988], provides in its entirety:

For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against him. After the plaintiff has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. In an action tried by the court without a jury the court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a). Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dis-

missal not provided for in this rule, other than a dismissal for lack of jurisdiction or for improper venue, operates as an adjudication upon the merits.

Any court in which is pending an action wherein for more than two years there has been no order or proceeding but to continue it, or wherein the plaintiff is delinquent in the payment of accrued court costs, may, in its discretion, order such action to be struck from its docket; and it shall thereby be discontinued. The court may direct that such order be published in such newspaper as the court may name. The court may, on motion, reinstate on its trial docket any action dismissed under this rule, and set aside any nonsuit that may be entered by reason of the nonappearance of the plaintiff, within three terms after entry of the order of dismissal or nonsuit; but an order of reinstatement shall not be entered until the accrued costs are paid.

were required to produce answers to Dr. Bellamy's interrogatories from the plaintiff. However, the information and the records produced by Mr. Losch indicate that work was done on the case and that an expert witness had been contacted. We also note that Mr. Losch sought to reinstate the case two days after the suit was dismissed and indicated his desire to proceed immediately with discovery.

■ Dr. Bellamy and Dr. Gogo contend that reinstatement would be prejudicial to them. It is difficult to see how reinstatement requested two days after the dismissal could create the prejudice alleged by the defendants. Dr. Bellamy argues that circumstances in his personal life have changed making it more difficult for him to defend the suit. Dr. Gogo generally indicates that some witnesses may have forgotten information or may now be unavailable, but does not indicate a particular problem. The doctors' important concerns are related to the malpractice suit rather than the delay and do not demonstrate that the doctors would have been prejudiced by an immediate reinstatement.

We hold that the circumstances of this case, namely the change of associate counsel, constitute good cause to set aside the dismissal of the case for failure to prosecute. We note that the defendants have failed to demonstrate any prejudice resulting from the delay. Because of the circumstances of this case, we hold that the circuit court abused its discretion in denying reinstatement.

For the foregoing reasons, the judgement of the Circuit Court of Raleigh County is reversed and the case is remanded for proceedings consistent with this opinion.

Reversed and Remanded.

BROTHERTON, Justice, dissenting:

I dissent to the majority opinion which, yet again, liberalizes the standards of quality that a lawyer must exhibit at all times in his representation of his clients.

The plaintiffs' attorney filed a malpractice suit against the defendant doctors on August 12, 1985. The defendant answered the complaint in a timely manner. At the same time, one of the defendants, Dr. Bellamy, filed interrogatories and a request for production of documents on August 23, 1985. The plaintiffs failed to respond, and on February 18, 1986, Dr. Bellamy filed a motion to compel. The plaintiffs answered the interrogatories and produced the requested documents on March 6, 1986. No other action occurred in this case until a dismissal notice was sent to the plaintiffs' attorney indicating that, because of inaction, the case would be dismissed under the two year rule unless "good cause" was shown. The plaintiffs' attorney did nothing, and the case was dismissed without prejudice on March 28, 1988.

Two days after the dismissal, however, the plaintiffs' attorney filed a motion for reinstatement for "good cause," claiming that out-of-state counsel with whom the plaintiffs' attorney was associated had withdrawn from participation in the case. The defendants, in their answer to the motion, alleged prejudice. The plaintiffs' motion for reinstatement was denied for the reason that "good cause" was not shown. Our review of the record reveals that the plaintiffs' claim of good cause was meritless. Not only did the plaintiffs' attorney have only an *informal* relationship with the out-of-state attorneys, the out-of-state attorneys were not listed as counsel of record. In fact, they had withdrawn from the practice of law in West Virginia in the fall of 1987, six months or more before the dismissal notice was sent to the plaintiff's counsel. Yet the majority still finds that the attorney's inaction was excused as good cause shown by the withdrawal of the out-of-state attorneys.

The majority opinion ignores two crucial facts: Good cause was not shown, and a very serious question exists concerning prejudice to the defendants. One of the defendants now resides in the State of Mississippi and correctly argues that he would be prejudiced if the case was reinstated. Instead of a realistic review of these facts, the majority spews an eight-page homily lecturing circuit judges in West Virginia on how they should run their courts, and not a word on how lawyers should conduct their practices.

I realize that the plaintiffs had a right of action. It may have been an excellent

right of action, but it was properly dismissed. Now the plaintiffs' right of action is against their attorney. A client has a right to expect his attorney to represent him according to the standards of conduct prescribed for attorneys. One of those standards requires an attorney to represent his client competently. Canon 6, Code of Professional Responsibility (1987). Disciplinary Rule 6–101(3) orders that an attorney shall not "neglect a legal matter entrusted to him." Canon 7 requires an attorney to represent a client zealously within the bounds of the law. Neither was done here. This attorney not only neglected this case, but he also failed to act at all, thus letting crucial deadlines slip by. Such failures make the attorney liable to the client for malpractice. The attorney was in the wrong, not the circuit court.

The majority interprets the phrase "good cause" to mean any cause, whether good or bad. It excuses inexcusable actions of attorneys who fail to perform the most basic functions of client representation. Once again, instead of properly policing the members of our profession, this Court encourages incompetence. Why flail the judge of the Circuit Court of Raleigh County for seeking to uphold the legal standards by which all lawyers are bound?