479 S.E.2d 339

**Shirman DIMON, Plaintiff
Below, Appellant,**

v.

**Fahmi MANSY and Tamam Mansy, his
wife, Defendants Below, Appellees.**

**No. 23071.**

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 25, 1996.

Decided Nov. 15, 1996.

Robert E. Barrat, Martinsburg, for Appellant.

Kay Fuller, Walter M. Jones, III, Martin & Seibert, L.C., Martinsburg, for Appellees.

CLECKLEY, Justice:

The appellant herein and plaintiff below, Shirman Dimon, seeks reversal of an order striking his case from the docket of the Circuit Court of Jefferson County. The circuit court found there had been no activity in the plaintiff's case for over a year, and had the matter stricken from its docket. The plaintiff filed a motion to have the case reinstated to the circuit court's docket, which motion was denied. The plaintiff now seeks to reverse the order denying reinstatement of his case.[1]

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

The underlying facts in this litigation are as follows: On March 11, 1991, the plaintiff was allegedly injured while driving his vehicle on the property of the appellees herein and the defendants below, Fahmi Mansy and Tamam Mansy. The record indicates that prior to the date of the accident, the defendants placed large wooden posts across a road adjacent to their property. The defendants allege they informed the plaintiff, prior to the accident, that the wooden posts were situated on the road. Nevertheless, the plaintiff plowed into the posts with his vehicle, and allegedly sustained injuries to his neck, back, and feet as a result of the accident. On May 19, 1992, the plaintiff filed a civil action seeking to recover damages for the injuries allegedly caused when he struck the wooden posts.

1. The Honorable Arthur M. Recht resigned as Justice of the West Virginia Supreme Court of Appeals effective October 15, 1996. The Honorable Gaston Caperton, Governor of the State of West Virginia, appointed him Judge of the First Judicial Circuit on that same date. Pursuant to an administrative order entered by this Court on October 15, 1996, Judge Recht was assigned to sit as a member of the West Virginia Supreme Court of Appeals commencing October 15, 1996 and continuing until further order of this Court.

2. Rule 41(b) of the Rules of Civil Procedure provides, in relevant part:

It appears from the record that from the date this case was filed in the circuit court until July 14, 1993, the only activity of record in the case was the filing of a notice to take the plaintiff's deposition by the defendants, and the filing of a discovery request by the defendants. On January 31, 1995, the circuit court entered an order pursuant to Rule 41(b) of the West Virginia Rules of Civil Procedure,[2] striking the plaintiff's case from its docket upon finding that the last activity of record was July 14, 1993. While it was not a matter of record when this case was stricken, the plaintiff alleged he was seeing a doctor in conjunction with his case on the day the trial court struck the action from its docket. On February 14, 1995, the plaintiff filed a motion to reinstate his case and a notice of substitution of counsel. By order dated March 15, 1995, the circuit court denied the motion for reinstatement, but acknowledged the substitution of counsel for appeal purposes. The plaintiff then filed a motion for reconsideration, which was also denied on May 31, 1995. The plaintiff, thereafter, filed this appeal seeking to have this Court reverse the decision to strike his case from the docket of the circuit court.

## II.

### DISCUSSION

Today's case presents a challenge to the procedural requirements and the breadth of discretion enjoyed by the circuit court in making rulings pursuant to Rule 41(b) of the West Virginia Rules of Civil Procedure. The two narrow questions presented by this appeal are (a) whether the circuit court erred in failing to give pre-dismissal notice of its intent to dismiss a pending civil action with

"Any court in which is pending an action wherein for more than one year there has been no order or proceeding ... may, in its discretion, order such action to be struck from its docket; and it shall thereby be discontinued. The court may direct that such order be published in such newspaper as the court may name. The court may, on motion, reinstate on its trial docket any action dismissed under this rule ... within three terms after entry of the order of dismissal[.]"

*See also* W. Va.Code, 56-8-9 (1995); W. Va. Code, 56-8-12 (1923).

prejudice, and (b) whether the circuit court abused its discretion in declining to reinstate this case to its docket. Our decision and response to these challenges implicate both the administration of justice and judicial economy. Accordingly, an understanding of the scope of a circuit court's authority as envisioned by Rule 41(b) is the first critical step in our consideration of this appeal.

■ It is well settled that a dismissal by a circuit court under Rule 41(b) for failure to prosecute operates as an adjudication on the merits and, unless reinstated by subsequent court order, such a dismissal is with prejudice.[3] The judicial authority to dismiss with prejudice a civil action for failure to prosecute cannot seriously be doubted. This power to invoke this sanction is necessary in order to prevent undue delays in the disposition of pending cases, and to avoid congestion in the calendar of the circuit court. 9 Wright & Miller, *Federal Practice and Procedure* § 2369 at 331 (1994); 3 Blackstone *Commentaries* 295–96 (1768). In the course of discharging their traditional responsibilities, circuit courts are vested with inherent and rule authority to protect their proceedings from the corrosion that emanates from procrastination, delay and inactivity. Thus, the determination whether the plaintiff has failed to move the case in a reasonable manner is a discretionary call for the circuit court. The power to resort to the dismissal of an action is in the interest of orderly administration of justice because the general control of the judicial business is essential to the trial court if it is to function. To this extent, Rule 41(b) is still good law in that granting authority to trial judges to control their dockets through dismissals is consistent, not debilitative, of sound judicial administration. It is equally clear that it is the plaintiff's obligation to move his or her case to trial, and where the plaintiff fails to do so in a reasonable manner, the case may be dismissed as a sanction for the unjustified delay. To be clear, we squarely hold that a plaintiff has a continuing duty to monitor a case from the filing until the final judgment, and where he or she fails

to do so, the plaintiff acts at his or her own peril.

The extent of this discretionary authority, however, must be delimited with care, for there is always the unseemly danger of overreaching when the judiciary undertakes to define its own power and authority. Guided by this limitation, we have suggested that a circuit court's sanction authority be a reasonable response to the problems and needs that provoked its use. *See Bartles v. Hinkle*, 196 W.Va. 381, 390, 472 S.E.2d 827, 836 (1996) ("In formulating the appropriate sanction, a court shall be guided by equitable principles."). In other words, a court's authority to issue dismissals as a sanction must be limited by the circumstances and necessity giving rise to its exercise. The sanction of dismissal with prejudice for the lack of prosecution is most severe to the private litigant and could, if used excessively, disserve the dignitary purpose for which it is invoked. It remains constant in our jurisprudence that the dignity of a court derives from the respect accorded its judgment. *See Tennant v. Marion Health Care Foundation, Inc.*, 194 W.Va. 97, 107, 459 S.E.2d 374, 384 (1995) ("fundamental to the judiciary is the public's confidence in the impartiality of judges and proceedings over which they preside"). Too often, that dignity is eroded, not enhanced, by too free of a recourse to rules foreclosing considerations of claims on the merit. *See also, e.g., Angel v. Bullington*, 330 U.S. 183, 203, 67 S.Ct. 657, 668, 91 L.Ed. 832 (1947), Rutledge, J., dissenting opinion, ("It is not every case in which a litigant has had 'one bite of the cherry' that the law forbids another. In other words, it is not every such case in which the policy of stopping litigation outweighs that of showing the truth."). *See generally* 18 Wright & Miller, *Federal Practice and Procedure* §§ 4419, 4442, 4443 (discussing the appropriateness of a flexible view).

■ Because of the harshness of the sanction, a dismissal with prejudice should be considered appropriate only in flagrant cases. Indeed, we recognize that dismissal

---

3. Furthermore, a dismissal under Rule 41(b), unless it is expressly stated to be without prejudice, will generally bar a subsequent action on the claim under the principles of res judicata. *See* 5 Moore's Federal Practice ¶ 41.14 (1995).

based on procedural grounds is a severe sanction which runs counter to the general objective of disposing cases on the merit. The quantity of appeals involving dismissals with prejudice for failure to prosecute presents a compelling and persuasive circumstance, requiring us to reconsider whether our Rule 41(b), as we currently interpret and apply it, is in need of revision to bring it in line with the majority of jurisdictions in this country, and to permit the trial courts a fairer and more expedient manner of achieving our mission of justice. In our judicial system, except in extraordinary circumstances that are not present here, it is apodictic that all parties receive adequate notice that a particular issue is being considered by the court, and an opportunity to present evidence on that issue *before* the court renders its ruling. We now extend the notice and hearing requirements to dismissals under Rule 41(b). We discern these requisites to be mandatory, not merely because the dismissal of a litigant case on grounds other than the merits is not to be lightly considered, but that our decision will promote uniformity and consistency among our judicial circuits.

■ It is our task to supervise the administration of justice in the circuit courts, and to that end, we must ensure that fair standards of procedure are maintained. Judicial supervision and responsibility "implies the duty of establishing and maintaining civilized standards of procedure and evidence." *McNabb v. United States*, 318 U.S. 332, 340, 63 S.Ct. 608, 613, 87 L.Ed. 819 (1943). Our supervisory and rulemaking authority extends to issuance of sanctions under Rule 41(b), particularly when we are dealing with a procedure for which a uniform practice is desirable. As suggested below, other appellate courts have found that exercise of their authority is appropriate when needed to guarantee litigants fair access to the courts to have their grievances heard on the mer-

its.[4] Of course, our supervisory and rule-making authority is not a form of free-floating justice, untethered to legal principle. Attempts by an appellate court, for example, to use broad supervisory and rulemaking authority as a way to control the properly vested discretion of the trial court should be squarely rejected. But, on occasion, and we think this is one, we must act to secure rights and fairness when we are persuaded a procedure followed in a trial court is wrong.

■ While we leave in-tact the standard upon which we review Rule 41(b) dismissals, we alter the procedural requirements to require pre-dismissal notice and an opportunity for the parties to be heard on the court's proposed action. To effectuate this procedural change, we hold that once the circuit court determines that a case has been inactive for an unreasonable period of time, the court, after serving notice on counsel and the parties and after affording them an opportunity to be heard, may dismiss the action unless good cause for the delay is presented at the hearing provided for that purpose. We now proceed to explain our decision in suitable detail.

## III.

## ANALYSIS

■ Traditionally, our scope of review, even where reinstatement is timely sought, is limited. It is only where there is a clear showing of an abuse of discretion that reversal is proper. In *Arlan's Department Store of Huntington, Inc. v. Conaty*, 162 W.Va. 893, 898, 253 S.E.2d 522, 526 (1979), we discussed the time limitation imposed upon motions to reinstate, and recognized that "[i]f a party fails to comply with the time periods contained in the rules, he may suffer adverse consequences including the loss of his case." We also held in Syllabus Point 1 of *Brent v.*

---

4. Most of these jurisdictions have held that pre-dismissal notice implicitly is mandated under the due process provisions of both the state and federal constitutions. We have observed recently that "it is a fundamental requirement of due process to be heard at a meaningful time and in a meaningful manner." *Hutchison v. City of Huntington*, 198 W.Va. 139, 154, 479 S.E.2d 649,

664 (1996) (citation and quotations omitted). However, we need not determine whether the issue is one of constitutional dimension because we may require lower courts to adhere to procedures deemed desirable as a matter of sound judicial practice even though the procedures may not be directed either by statute or the Constitution.

*Board of Trustees of Davis & Elkins College,* 173 W.Va. 36, 311 S.E.2d 153 (1983), that a case may be reinstated only upon the satisfaction of two separate requirements:

> "Under W.Va.R.Civ.P. 41(b), in order to reinstate a cause of action which has been dismissed for failure to prosecute, the plaintiff must move for reinstatement within three terms of entry of the dismissal order and make a showing of good cause which adequately excuses his neglect in prosecution of the case."

*See* Syl. Pt. 1, *Taylor v. Smith,* 171 W.Va. 665, 301 S.E.2d 621 (1983); Syl., *Rollyson v. Rader,* 192 W.Va. 300, 452 S.E.2d 391 (1994); Syl., *Frazier v. Pioneer Chevrolet–Cadillac, Inc.,* 192 W.Va. 468, 452 S.E.2d 926 (1994). *See also* Syl., *Snyder v. Hicks,* 170 W.Va. 281, 294 S.E.2d 83 (1982) (" '[a] trial court, upon a motion to reinstate a suit or action, ... is vested with a sound discretion with respect thereto....' Syl. Pt. 4, *White Sulphur Springs, Inc. v. Jarrett,* 124 W.Va. 486, 20 S.E.2d 794 (1942), *in part* "); Syl. Pt. 2, *Nibert v. Carroll Trucking Co.,* 139 W.Va. 583, 82 S.E.2d 445 (1954) ("[i]n the absence of a showing of good cause in support of a motion to set aside a nonsuit and reinstate the case the ruling of a trial court denying such motion will not be disturbed by an appellate court").

▬ There is no dispute that the plaintiff has clearly satisfied the first requirement enunciated in *Brent,* i.e., he timely moved pursuant to Rule 41(b) to have his case reinstated. However, "[i]n applying this statute this Court has held that it does not entitle an applicant to have an order of dismissal ... set aside as a matter of right[.]" *Nibert,* 139 W.Va. at 589, 82 S.E.2d at 449. (Citation omitted). We stated in *Brent* that "Rule 41(b) does not ... dispense with a showing of good cause in order for the plaintiff to be entitled to reinstatement. This Court has always required good cause to be shown for reinstatement." 173 W.Va. at 39, 311 S.E.2d at 157. (Citations omitted). *See*

*Hutchinson v. Mitchell,* 143 W.Va. 280, 286, 101 S.E.2d 73, 77 (1957) ("[o]ne can not refuse to prosecute or defend and then ask to do so without showing why he thus acts so inconsistently"). The plaintiff contends that good cause was shown to have his case reinstated. The plaintiff argued to the circuit court, and now to this Court, that his previous counsel was withdrawing from the practice of law beginning in 1993, and that he was unable to find substitute counsel due to financial constraints. In support of this alleged good cause, the plaintiff cites our decision in *Evans v. Gogo,* 185 W.Va. 357, 407 S.E.2d 361 (1990), wherein we held that substitution of out-of-state counsel under the facts of that case demonstrated good cause for reinstatement. *Evans* does not come to the aid of the plaintiff. The defendants herein correctly argue that *Evans* is clearly distinguishable from the instant matter in three respects. First, the withdrawing counsel in *Evans* was an out-of-state attorney, but counsel in the instant case was an in-state attorney. Second, the plaintiff's counsel in *Evans* was able to produce documents showing that some activity had, in fact, taken place in the case during its apparent dormancy. However, in the instant matter, the only activity the plaintiff has offered is an alleged litigation visit to a doctor on the day the circuit court struck the case from its docket. Finally, in *Evans,* the out-of-state counsel withdrew from the case before the case was stricken from the circuit court's docket. In the instant matter, plaintiff's counsel withdrew after the case was removed from the circuit court's docket. The defendants also note that, while plaintiff contends he could not procure substitute counsel from 1993 up to the date of dismissal of his lawsuit, the plaintiff readily found substitute counsel immediately after the case was stricken from the docket. The plaintiff's proffer of good cause establishes a standard that would do away with this requirement. We are not prepared to adopt plaintiff's nonstandard.[5]

---

**5.** The plaintiff urges this Court to look at the application of Rule 41(b) as having the same burden of proof required to overcome a Rule 12(b)(6) motion to dismiss. Under such a standard, the plaintiff contends that he met the burden and that the circuit court should have reinstated his case. First, we disagree with the plaintiff that his proffered evidence of good cause would pass muster under a Rule 12(b)(6) standard. Second, as pointed out in the defendants' brief, although rulings under Rule 41(b) and Rule 12(b)(6) amount to adjudications on the merit,

"The law aids those who are diligent, not those who sleep upon their rights." *Taylor,* 171 W.Va. at 667, 301 S.E.2d at 624. The plaintiff has not established good cause.

Next, the plaintiff does not dispute that he received notice of the dismissal after the circuit court removed the case from its docket. We held in Syllabus Point 2 of *Brent:* "Upon entry of an order of dismissal for failure to prosecute pursuant to Rule 41(b), notice of the entry of the order must be provided pursuant to Rule 77(d)." Notwithstanding the post-dismissal notice, the plaintiff contends he should have been given notice that the circuit court was contemplating striking the case before such action was taken in order to afford him an opportunity to argue against such action. The plaintiff concedes that the present state of the law does not impose such a notice requirement on a circuit court. The plaintiff argues, however, that this is the direction the law should take. In support of this argument, the plaintiff cites note 2 of our decision in *Taylor,* 171 W.Va. at 666, 301 S.E.2d at 623, wherein we said:

"It has been suggested that '[a]fter the bench and bar have had experience with the operation of the new Rules, it may be desirable to eliminate entirely the second paragraph of Rule 41(b), which paragraph is not in the Federal Rule. All such involuntary dismissals could be made under the first sentence in Rule 41(b), on motion or on the court's own initiative.' M. Lugar & L. Silverstein, *West Virginia Rules* 331 (1960). Our statutory rules now embraced in Rule 41(b) were borrowed from Virginia. Virginia modified its statute in 1932 to provide that the clerk of the court shall notify the parties in interest if known, or their counsel of record, if living, at his last known address, at least fifteen days before the entry of the order of dismissal, so that all parties may have an opportunity to be heard on the matter. *See* Va.Code, § 8.01–335 (1977) and Va.Code § 6172 (1950). We are inclined to think our rule should be modified to provide for some form of notice of dismissal."

We note at the outset that the United States Supreme Court upheld, in the face of a due process challenge, the practice of dismissing an action, without notice and an opportunity to be heard, for want of prosecution. *Link v. Wabash Railroad Co.,* 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962). While addressing the due process issue inherent in such a disposition, the Court in *Link* said the following:

"Nor does the absence of notice as to the possibility of dismissal or the failure to hold an adversary hearing necessarily render such a dismissal void. It is true, of course, that 'the fundamental requirement of due process is an opportunity to be heard upon such notice and proceedings as are adequate to safeguard the right for which the constitutional protection is invoked.' *Anderson National Bank v. Luckett,* 321 U.S. 233, 246, 64 S.Ct. 599, 606, 88 L.Ed. 692. But this does not mean that every order entered without notice and a preliminary adversary hearing offends due process. The adequacy of notice and hearing respecting proceedings that may affect a party's rights turns, to a considerable extent, on the knowledge which the circumstances show such party may be taken to have of the consequences of his own conduct. . . .

"In addition, the availability of a corrective remedy such as is provided by Federal

---

they are otherwise distinguishable rules that serve different functions and, therefore, require different standards and impose different burdens. Indeed, we believe Rule 12(b)(6) would be inappropriate for Rule 41(b) determinations. Under Rule 12(b)(6), the circuit court must consider the pleadings in the light most favorable to the plaintiff. *See* Syl. Pt. 2, *State ex rel McGraw v. Scott Runyan Pontiac–Buick, Inc.,* 194 W.Va. 770, 461 S.E.2d 516 (1995); *Murphy v. Smallridge,* 196 W.Va. 35, 36, 468 S.E.2d 167, 168 (1996). More significantly, a circuit court should not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Syl. Pt. 3, in part, *Chapman v. Kane Transfer Co., Inc.,* 160 W.Va. 530, 236 S.E.2d 207 (1977) (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80, 84 (1957)). Thus, the singular purpose of a Rule 12(b)(6) motion is to seek a determination whether the plaintiff is entitled to offer evidence to support the claims made in the complaint. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

Rule of Civil Procedure 60(b) ... renders the lack of prior notice of less consequence." 370 U.S. at 632, 82 S.Ct. at 1389–90, 8 L.Ed.2d at 739.

Although we were not called upon to squarely address the issue of notice prior to dismissal for failure to prosecute in our decision in *Brent*, we did acknowledge the above passage from *Link* in that case. In fact, we intimated that "the availability of reinstatement pursuant to Rule 41(b), as well as the post-judgment remedies provided by Rule 60(b), obviates the need for advance notice of the entry of a dismissal order[.]" *Brent*, 173 W.Va. at 40–41, 311 S.E.2d at 158. We believe the time has arrived to disassociate the civil practice in this State with the position taken in *Link*, and the dicta of any of our previous decisions which indicated that notice prior to dismissal for failure to prosecute is not required. Although it is true that either an interested party, or the circuit court on its own motion, may move to dismiss, fundamental fairness dictates that notice and a hearing be afforded prior to a determination by the trial court. Thus, today, we make explicit that before a court may dismiss an action under Rule 41(b), notice and an opportunity to be heard must be given to all parties of record. To the extent that *Brent* and any of our previous holdings differ with this ruling, they are expressly overruled.

The notice is afforded the parties so that they may object and argue against the proposed dismissal determination and present evidence of good cause for the delay. To be precise, this procedural rule that we fashion is not designed to serve as a reminder or a last chance for the parties to take action so that the case will not be terminated. Once the notice of dismissal has been sent, the parties have essentially lost their right to litigate unless they can show good cause for the delay. The sole purpose of notice and hearing is to afford the parties an opportunity to influence the trial court's proposed determination of dismissal.

The decision we reach today moves our civil practice forward and in lock-step with the manner in which the majority of jurisdictions address this issue. *See, Richmond Township v. Thornton*, 159 Pa.Cmwlth. 556, 633 A.2d 1312 (1993); *Dlouhy v. Frymier*, 92 Ohio App.3d 156, 634 N.E.2d 649 (1993); *Preuss v. Wilkerson*, 858 P.2d 1362 (Utah 1993); *Vilsick v. Fibreboard Corp.*, 861 S.W.2d 659 (Mo.App. E.D.1993); *Powers v. Professional Rodeo Cowboys Ass'n*, 832 P.2d 1099 (Colo.App.1992); *Heiman v. Atlantic Richfield Co.*, 807 P.2d 257 (Okl.1991); *General Elec. Co. v. Falcon Ridge Apartments Joint Venture*, 811 S.W.2d 942 (Tex.1991); *Chisholm v. Foley*, 427 N.W.2d 278 (Minn. App.1988); *Van Tienen v. Register Publishing Co.*, 208 Conn. 472, 544 A.2d 1219 (1988); *Sun v. Jones*, 188 Ga.App. 552, 373 S.E.2d 656 (1988); *Kirschner v. Worden Orchard Corp.*, 48 Wash.App. 506, 739 P.2d 119 (1987); *Gilbertson v. Osman*, 185 Cal.App.3d 308, 229 Cal.Rptr. 627 (Cal.App. 4 Dist.1986) *overruled on other grounds, Woods v. Young*, 53 Cal.3d 315, 279 Cal.Rptr. 613, 807 P.2d 455 (1991); *Neylan v. Vorwald*, 124 Wis.2d 85, 368 N.W.2d 648 (1985); *Miller v. Perry*, 468 A.2d 981 (Me.1983); *Hertz Commercial Leasing Corp. v. Joseph*, 641 S.W.2d 753 (Ky.App.1982); *Florida East Coast Ry. Co. v. Russell*, 398 So.2d 949 (Fla.App.1981); *B–W Acceptance Corp. v. Twin State Elec. Supply Co.*, 127 Vt. 94, 238 A.2d 663 (1968).

In carrying out the notice and opportunity to be heard requirements we have announced today, before a case may be dismissed under Rule 41(b), the following guidelines should be followed: First, when a circuit court is contemplating dismissing an action under Rule 41(b), the court must first send a notice of its intent to do so to all counsel of record and to any parties who have appeared and do not have counsel of record. The notice shall inform that unless the plaintiff shall file and duly serve a motion within fifteen days of the date of the notice, alleging good cause why the action should not be dismissed, then such action will be dismissed, and that such action also will be dismissed unless plaintiff shall request such motion be heard or request a determination without a hearing.[6] Second, any party op-

---

**6.** So that the circuit court may consider and rule on motions and replies that are filed by the parties with dispatch, we believe it is the better practice to not only file the motion with the clerk

posing such motion shall serve upon the court and the opposing counsel a response to such motion within fifteen days of the service of such motion, or appear and resist such motion if it be sooner set for hearing. Third, if no motion is made opposing dismissal, or if a motion is made and is not set for hearing by either party, the court may decide the issue upon the existing record after expiration of the time for serving a motion and any reply. If the motion is made, the court shall decide the motion promptly after the hearing. Fourth, the plaintiff bears the burden of going forward with evidence as to good cause for not dismissing the action; if the plaintiff does come forward with good cause, the burden then shifts to the defendant to show substantial prejudice to it in allowing the case to proceed; if the defendant does show substantial prejudice, then the burden of production shifts to the plaintiff to establish that the proffered good cause outweighs the prejudice to the defendant. Fifth, the court, in weighing the evidence of good cause and substantial prejudice, should also consider (1) the actual amount of time involved in the dormancy of the case, and (2) whether the plaintiff made any inquiries to his or her counsel about the status of the case during the period of dormancy. Sixth, if a motion opposing dismissal has been served, the court shall make written findings, and issue a written order which, if adverse to the plaintiff, shall be appealable to this Court as a final order; if the order is adverse to the defendant, an appeal on the matter may only be taken in conjunction with the final judgment order terminating the case from the docket. If no motion opposing dismissal has been served, the order need only state the ground for dismissal under Rule 41(b). Seventh, if the plaintiff does not prosecute an appeal of

an adverse decision to this Court within the period of time provided by our rules and statutes, the plaintiff may proceed under Rule 41(b)'s three-term rule to seek reinstatement of the case by the circuit court—with the time running from the date the circuit court issued its adverse order. Eighth, should a plaintiff seek reinstatement under Rule 41(b), the burden of going forward with the evidence and the burden of persuasion shall be the same as if the plaintiff had responded to the court's initial notice, and a ruling on reinstatement shall be appealable as previously provided by our rule.

Because the plaintiff was not afforded notice and an opportunity to be heard prior to the dismissal of the instant case, and due to the burden of proof we have announced herein for such a hearing, we are remanding this case back to the circuit court with instructions to hold a predismissal hearing as outlined in this opinion.

## IV.

## CONCLUSION

For the foregoing reasons, the judgment of the Circuit Court of Jefferson County is reversed and remanded.

Reversed and Remanded.

RECHT, J., sitting by temporary assignment.

---

of the circuit court but, in addition, deliver a copy of the papers to the judge's chambers for the court's information. Of course, if the local

rules of the circuit court dictate otherwise, the local rules must be followed.