# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

Kenneth Bing,
**Plaintiff Below, Petitioner**

vs.) No. 18-0691 (Mineral County 09-C-86)

**Lumber and Things, Inc.,**
**Defendant Below, Respondent**

**FILED**

**September 9, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Kenneth Bing, by counsel John H. Treadway Jr., Jeffrey S. Bowers, Mark D. Obenshain, and Justin M. Wolcott, appeals the Circuit Court of Mineral County's July 11, 2018, and July 30, 2018, orders granting respondent's motion to dismiss for failure to prosecute. Respondent Lumber and Things, Inc., by counsel David Collins, filed a response.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On October 30, 2008, petitioner, then employed by respondent, sustained a workplace injury that required the partial amputation of his hand. Petitioner retained David E. Furrer, a Maryland-based attorney licensed to practice in this state, to prosecute a deliberate intent cause of action against respondent, claiming that respondent intentionally removed the protective guards from the miter saw on which petitioner sustained his injury. Mr. Furrer filed a complaint on petitioner's behalf on July 27, 2009.[1]

Respondent moved to dismiss the complaint for insufficient service of process and return of service of process. Mr. Furrer responded to this motion, claiming that service was proper, but the circuit court, on November 4, 2009, determined otherwise and afforded petitioner thirty days to perfect proper service of process. Ultimately, Mr. Furrer effectuated proper service of process.

Respondent served interrogatories and requests for production of documents on February 10, 2010. Responses to the requests were not timely filed, nor were they filed after respondent twice requested responses. Accordingly, respondent moved to compel responses on April 16, 2010.

---

[1]Although the facts giving rise to this appeal are undisputed, respondent denies the wrongdoing alleged in petitioner's complaint.

1

Mr. Furrer (and petitioner) failed to appear at the hearing on the motion to compel. The circuit court granted respondent's motion and directed that responses be filed.

On April 28, 2010, respondent served requests for admission upon petitioner. When responses to these requests were similarly unforthcoming, respondent moved for summary judgment arguing that, as the requests were now deemed admitted, petitioner would be unable to prevail at trial. Mr. Furrer filed an "answer" to the motion for summary judgment claiming that he never received the requests for admission. Mr. Furrer provided the court with affidavits from two paralegals in his law office, who each asserted that they had no knowledge of any requests for admission having been received by their office in the underlying case. The court denied respondent's motion for summary judgment on September 3, 2010.

Following entry of that order, nearly eight years passed without activity in the case below. The next activity occurred on June 4, 2018, when petitioner filed a notice of substitution of counsel. Four days later, he served his first discovery requests through his newly-retained counsel. Respondent filed a motion to dismiss for failure to prosecute on June 28, 2018. In his response to this motion, petitioner asserted that Mr. Furrer never informed him of the motion to dismiss for defective service, the discovery defaults, or the motion for summary judgment. Petitioner claimed that Mr. Furrer never provided letters, e-mails, or phone messages with updates in his case, but that phone records document that he called Mr. Furrer's office no less than twenty-three times in the period following the denial of respondent's motion for summary judgment. When petitioner called Mr. Furrer's office, he was reportedly told that "these cases take time," "we are working on your case," or to "be patient."

Petitioner further detailed that he first learned that Mr. Furrer was no longer employed by his Maryland law firm and that the firm, having no other attorneys licensed in West Virginia, could not represent him in a September of 2017 telephone call to Mr. Furrer. Petitioner stated that his initial attempts to secure alternate representation were unsuccessful, but he eventually retained current counsel on May 21, 2018, just prior to reinitiating activity in this case. Finally, petitioner asserted that his current counsel learned that Mr. Furrer's law license had been indefinitely suspended in Maryland in January of 2018, and petitioner characterized the conduct leading to Mr. Furrer's license suspension as "strikingly similar" to that exhibited by Mr. Furrer in his representation of petitioner.

Following a hearing on the motion to dismiss, the circuit court granted respondent's motion on July 11, 2018. The court found that in the approximate ten-year period that had elapsed since petitioner's injury, respondent's workforce had almost entirely turned over, its plant had been retooled, and the equipment on which petitioner was injured was no longer available for viewing, inspection, or examination. The court concluded that these facts rendered further prosecution highly prejudicial to respondent's ability to defend the suit, and that petitioner "appears to have other remedies available to him." The court amended its dismissal order on July 30, 2018, to include the additional findings that the delay in prosecution was not attributable to petitioner, that Mr. Furrer falsely told petitioner that his case was progressing, that petitioner acted diligently in communicating with counsel to ascertain the status of his case, and that the prejudice to respondent caused by the delay in prosecution was equally prejudicial to petitioner. This appeal followed.

In reviewing a circuit court order dismissing a case for inactivity under Rule 41(b) of the West Virginia Rules of Civil Procedure, we apply an abuse of discretion standard.[2] *See Caruso v. Pearce*, 223 W. Va. 544, 547, 678 S.E.2d 50, 53 (2009). The scope of review is limited as "[o]nly where we are left with a firm conviction that an error has been committed may we legitimately overturn a lower court's discretionary ruling." *Id.* (citations omitted).

On appeal, petitioner argues that the circuit court abused its discretion in dismissing the action because Mr. Furrer's "extraordinary pattern of neglect and deception" demonstrated good cause for not dismissing it. Petitioner asserts that he attempted to contact Mr. Furrer numerous times and relied on Mr. Furrer's assurances that his case was progressing. Additionally, petitioner retained new counsel as soon as he was able. Relying on *Covington v. Smith*, 213 W. Va. 309, 582 S.E.2d 756 (2003), in which we reversed the circuit court's denial of a motion to reinstate an action dismissed for failure to prosecute, petitioner urges reversal here and states that any prejudice to respondent caused by the delay is outweighed by Mr. Furrer's pattern of neglect and deception.

We outlined, in Syllabus Point 3 of *Dimon v. Mansy*, 198 W. Va. 40, 479 S.E.2d 339 (1996), certain guidelines a circuit court must follow in considering a motion to dismiss under Rule 41(b). Procedurally,

> the plaintiff bears the burden of going forward with evidence as to good cause for not dismissing the action; if the plaintiff does come forward with good cause, the burden then shifts to the defendant to show substantial prejudice to it in allowing the case to proceed; if the defendant does show substantial prejudice, then the burden of production shifts to the plaintiff to establish that the proffered good cause outweighs the prejudice to the defendant.

*Id.* at 43, 479 S.E.2d at 342, Syl. Pt. 3, in part. We also instructed that, in weighing evidence of good cause and substantial prejudice, a circuit court

> should also consider (1) the actual amount of time involved in the dormancy of the case, (2) whether the plaintiff made any inquiries to his or her counsel about the status of the case during the period of dormancy, and (3) other relevant factors bearing on good cause and substantial prejudice.

*Id.*

In *Covington*, James and Jeraldine Covington, Alabama residents, retained counsel to prosecute a personal injury lawsuit against two individuals to recover damages for injuries sustained by Mr. Covington in West Virginia. 213 W. Va. at 314, 582 S.E.2d at 761. Counsel for one of the defendants deposed several witnesses and filed a motion to compel the production of certain documents, and Mr. Covington's attorney deposed the defendants. *Id.* After no additional activity occurred in the case for slightly more than one year, the circuit court filed notice of its

---

[2] In pertinent part, Rule 41(b) provides that "[f]or failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant."

3

intent to dismiss the suit for inactivity. *Id.* The Covingtons' counsel filed a motion opposing dismissal, but he neglected to inform the Covingtons of the pending dismissal proceedings. *Id.* The circuit court dismissed the case for inactivity, and once the Covingtons' counsel notified them of the dismissal, they retained substitute counsel to pursue reinstatement of their suit. *Id.* The Covingtons' motion to reinstate their lawsuit was denied, and they appealed to this Court. *Id.*

On appeal from the circuit court's denial, we acknowledged the "discretionary nature of such a determination," but noted that "reinstatement is nevertheless proper where the moving party demonstrates the existence of good cause for such relief." *Id.* at 316, 582 S.E.2d at 763. There, we were "firmly left with the conviction that an error ha[d] been committed as we [were] not convinced that the inactivity . . . was so egregious as to necessitate the sanction of dismissal." *Id.* at 323, 582 S.E.2d at 770. The facts leading to this conclusion included that Mr. Covington made numerous inquiries of his attorney regarding the status of his case, including ninety-one telephone calls from January of 1998 to November of 2000 and two trips from Alabama to counsel's office, that only counsel and not the Covingtons were apprised of the court's notice of its intent to dismiss, and that the Covingtons discharged their prior counsel and retained new counsel once they learned that prior counsel was not attempting to have their case reinstated. *Id.* These findings showed that the Covingtons "fulfilled their 'continuing duty to monitor [their] case'" and that they did not contribute to any delay. *Id.* at 324, 582 S.E.2d at 771. Additionally, we found that any prejudice to the defendants was not "so great as to outweigh the harm the Covingtons would suffer if the dismissal of their case were to stand." *Id.*

As the circumstances of the instant matter are distinguishable from those presented in *Covington*, we find no abuse of discretion in the circuit court's dismissal of petitioner's case. In *Covington*, the matter sat dormant for hardly more than a year whereas almost eight years passed without activity here. Contrasted with the Covingtons' ninety-one telephone calls and two trips from out of state to their attorney's office over approximately three years, petitioner made a fraction of the number of calls the Covingtons made and zero trips to counsel's office over a longer period of time. Critically, we found that the prejudice to the defendants in *Covington* did not outweigh the harm to the Covingtons, but the circuit court found otherwise here, noting the turnover in respondent's workforce, retooling of its plant, and unavailability of the saw on which petitioner sustained his injury. As we made clear in *Dimon*, a plaintiff must "establish that the proffered good cause *outweighs* the prejudice to the defendant." 198 W. Va. at 43, 479 S.E.2d at 342, Syl. Pt. 3, in part (emphasis added). We find no error in the circuit court's conclusion that petitioner made no such showing here.

Moreover, we note that petitioner is not without remedy as he may have a cause of action against Mr. Furrer for his failure to adequately represent petitioner. Rule 1.1 of the Rules of Professional Conduct requires a lawyer to "provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." In this vein,

> [w]hen this Court believes a case before it presents the appearance of conduct that does not comport with the West Virginia Rules of Professional Conduct (RPC), we will comply with Rule 8.3(a) of the RPC and [Rule 2.15(B)] of

4

the Code of Judicial Conduct, and refer the matter to the Office of Disciplinary Counsel for its review and appropriate action.

Syl. Pt. 8, *Gum v. Dudley*, 202 W. Va. 477, 505 S.E.2d 391 (1997). Accordingly, we direct the Clerk of the Supreme Court of Appeals to transmit a certified copy of this memorandum decision to the Office of Disciplinary Counsel.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED**: September 9, 2019

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison